J. W. Heffelfinger, Respondent, v. Modern Woodmen of America, Appellant.—87 S. W. (2d) 660.

Kansas City Court of Appeals. October 7, 1935.

*Jones & Wesner* for respondent.

*George G. Perrin* and *George H. McDonald,* of Rock Island, Illinois; *Nelson C. Pratt,* of Omaha, Nebraska; *Lamm, Bohling & Barnett,* of Sedalia, Missouri, and *Arthur N. Adams,* of Kansas City, Missouri, for appellant.

CAMPBELL, C.—The defendant has appealed from a judgment recovered against it by J. W. Heffelfinger, administrator of the estate of Nancie Scott, deceased. The judgment is based upon a benefit certificate or policy of life insurance, issued to R. M. Scott by the defendant in 1894 and in which Nancie Scott, wife of the insured, was the named beneficiary. R. M. Scott died January 31, 1932. His wife died in March, 1932. It is agreed that the insured Scott

paid all assessments and dues in accordance with the terms of the contract of insurance which accrued prior to July, 1930, and that he did not pay the monthly assessment due in July, 1930, nor the assessment due in any subsequent month. The plaintiff concedes that under the terms of the contract of insurance the deceased Scott was obligated to pay an assessment in July, 1930, and in each month thereafter and that a failure to make such payments forfeited the insurance unless certain representations made to him by a special representative of the defendant estopped the defendant from claiming that the insurance was forfeited. The defense was that the failure of Scott to pay the assessment due in July, 1930, and his failure to pay subsequent assessments, forfeited the insurance.

The plaintiff claims that the evidence of Joe M. Scott, son of the insured, is sufficient to support his theory of estoppel. The evidence of Joe M. Scott was to the effect that in May or June, 1930, a special representative of the defendant called on the insured Scott, told him that his old certificate had no value and that defendant would not receive any further assessments on it and sought to induce Scott to exchange his old certificate for a new one. Scott, the insured, refused to make the exchange, said that "as long as he (clerk of the local camp) took his money down at Hughesville he was going to keep his old policy up regardless of what it was . . .;" that thereafter and prior to the time when the July, 1930, assessment was due the witness and his father called on Mr. Winters, clerk of the local camp.

"Q. What did you find out about your father's policy? A. Couldn't find out nothing. Wouldn't take the money. If there was any raise, didn't know what it would be.

"Q. Did you have any money with you or your father? A. I never did see him broke.

"Q. Did he have any money in his hand? A. I couldn't say.

"Q. Did he offer Winters any money? A. He offered to pay him.

"Q. Did he offer the money or do it by word of mouth? A. I figured his mouth was as good as his money.

"Q. What took place? A. He asked how much it was, he was willing to pay it. He said he didn't know.

"Q. And that all took place prior to the time your father ceased to be a member? A. No, that was before.

"Q. I said before, yes? A. When he was a member, yes, sir.

. . .

"Q. Did he do anything more after this time that you know of? A. Just found out he wouldn't take it and if he wouldn't take it you can't make a man take anything he don't want. . . .

"THE COURT: He asked if your father did anything more. A. I couldn't say. I was only with him the one time. . . .

"Q.   Mr. Winters wouldn't take the money—did he tell you why?   A.   Told him he had orders not to take it.   . . .

"Q.   Who did he say authorized him not to take it?   A.   Mr. Ludemann.

"Q.   Did he say anybody else?   A.   That fellow up home to see my father.

"Q.   Authorized him not to take it?   A.   Yes, sir."

The statement of the insured Scott that he intended to keep his old policy and to pay assessment thereon as long as the local camp clerk would receive them, and his inquiry concerning future assessments show beyond doubt that he did not believe or rely upon the statements and representation of the defendant's special agent.   In the absence of evidence showing that insured relied upon the statements of the defendant's said agent there was no estoppel.   The precise question was recently ruled adversely to plaintiff's contention in the case of Biggs v. Modern Woodmen of America, 82 S. W. (2d) 898.   [See also opinion in case 18268, McMullen v. Modern Woodmen, decided at the present term.]

The plaintiff further claims that the insured offered to pay assessments to the clerk of the local camp and that the offer was refused. We have quoted the evidence on that subject and need not repeat it.   Suffice it to say that if the evidence tends to show tender it also shows that the offer was made prior to the time the assessment was due.   The statement of the camp clerk related to matters in the future and as a matter of law such statements were insufficient to work estoppel.   [Biggs case, supra.]

It is our duty to give to the evidence in the present case an interpretation in harmony with the interpretation of the Supreme Court of like evidence in the Biggs case.   [State ex rel. v. Trimble, 39 S. W. (2d) 355.]

The burden of proof was upon plaintiff to produce evidence supporting his plea of estoppel.   This evidence he failed to produce. Governed by the ruling in the Biggs case, we hold that plaintiff failed to prove estoppel and that the trial court erred in refusing defendant's instruction in the nature of a demurrer to the evidence. The judgment is reversed.   *Reynolds, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court.   The judgment is reversed.   All concur.