COMMERCIAL STANDARD INSURANCE COMPANY, A CORPORATION, RE-SPONDENT, v. RISS AND COMPANY, A CORPORATION, APPELLANT.—179 S. W. (2d) 641.

Kansas City Court of Appeals.   March 6, 1944.

M. D. Campbell, Jr., for appellant.

232

*C. R. Krimminger, Raymond E. Martin* and *W. Raleigh Gough* for respondent.

SPERRY, C.—Commercial Standard Insurance Company, a corporation, plaintiff, sued Riss & Company, Inc., a corporation, a common carrier of goods by truck, defendant, for a balance claimed to be due as premium charge on a policy of insurance issued to it, covering defendant on public liability and property damage. Trial to the court, a jury having been waived, resulted in judgment for plaintiff and defendant appeals.

The policy in controversy was issued June 22, 1934, for a period of one year from date, but it was canceled, at the request of defendant, February 15, 1936. Plaintiff sued for the balance due as unpaid

premium. Its theory is that it is entitled to collect on the "short rate" cancellation basis, eighty per cent on the annual premium, whereas defendant's contention is that plaintiff is entitled to collect only on a "pro rate" basis. The court found for plaintiff on its theory of the case.

The main body of the policy contained, among other provisions, the following:

### "M. Cancellation

"This policy may be cancelled at any time by either the Assured or the Company by giving written notice of such cancellation to the other party stating when thereafter cancellation shall be effective, and the date of cancellation shall then *be the end of the policy period.* If cancelled by the Assured the policy shall be surrendered and the Company shall receive or retain the customary short rate premium, if cancelled by the Company, the Company shall receive or retain the earned premium on a *pro rata* basis. . . ." (Emphasis ours.)

Attached to said policy is the following:

### "Gross Receipts Endorsement

"In consideration of the premium *determined as hereinafter provided for,* it is hereby understood and agreed by and between the named assured and the company that this policy shall cover for public liability and property damages only, the operation of all commercial automobiles and trailers owned, hired, or used by the assured and used by him for the purposes stated therein *during the policy period* without a specific description of and specific premium charge for each commercial automobile and trailer to be covered as required by the policy.

"The term Named Assured shall be construed to include the interests of the owners and operators of hired cars and/or trailers and of independent contractors, but only while such commercial automobiles and/or trailers are being operated in the interest of or under contract to the Named Assured.

"It is understood and agreed, however, that this policy does not cover Assured's legal liability for injuries sustained by Drivers, Helpers, or persons employed in any other capacity, either temporarily or permanently, by any individual or concern who may do hauling for the Riss & Company, Inc.

"On or before the 15th day of each month during the term of this policy the Assured hereunder will render to the company a statement showing the Gross revenue or earnings (whether collected or not) for all commercial automobiles and trailers owned, hired and used by the assured during the preceding month, the premium for each month to be computed on said statement at a rate of two per cent per $100.00 of gross revenue so earned, the premium to be payable to the company at once. In addition to reporting gross receipts as provided hereunder the assured also agrees to furnish along with the re-

port of gross receipts, a complete list of the equipment including the motor numbers and numbers of days each piece of equipment was in use whether running empty or loaded.

"The actual earned premium for the policy shall be determined by audit at the *expiration* thereof, on the basis of the total gross revenue earned *during the policy period.* If the premium so determined is greater than the advance premium, the assured shall immediately pay the difference to the company. If less, the company shall return the unearned portion to the assured, but the minimum annual premium for the policy will be $242.57 for each outfit figured *pro rata* for actual time such outfit is covered hereunder.

"The Assured shall maintain for each location at which automobiles are operated a complete and accurate record of the commercial automobiles and trailers owned, hired and used by him during the policy period and of the gross earnings derived from such commercial automobiles and trailers, whether collected or not. The company shall be permitted to examine the books and records of the assured insofar as they relate to the use and operation of his commercial automobiles or trailers and to the gross revenue or earnings derived therefrom, and such examination may be made at any time during the policy period or within one year after its termination.

"Subject, otherwise, however, to all the terms, limits and conditions of the policy as written." (Emphasis ours.)

Defendant contends that the language of the endorsement last above quoted conflicts with the provisions of "M. Cancellation," contained in the body of the policy and that, therefore, an ambiguity exists.

It will be noted that paragraph "M" of the policy provides a method by which either party may cancel the policy; and it further provides that if said policy is canceled the date of such cancellation shall be *"the end of the policy period."* It is also noted that the "Gross Receipts Endorsement" provides a definite, distinct and complete method of calculating earned premium on the policy in all circumstances.

The endorsement begins with "In consideration of the premium *determined as hereinafter provided for,* . . ." (Emphasis ours.) Thereafter, in another paragraph thereof, follows a complete statement of the specific methods to be followed in computing the earned premium. Undoubtedly such paragraph relates back to the first sentence contained in the endorsement.

Furthermore, there was evidence tending to prove that "Gross Receipts Endorsement" was especially prepared and attached to the policy after plaintiff's agent and defendant's president had conferred and agreed on the contract. This was a special policy and, while apparently a standard form was used, yet an especially prepared endorsement was attached covering the method to be followed in determining the amount due for the *"policy period."* It is clear that, by provisions of "M. Cancellation" as well as by the provisions of

"Gross Receipts Endorsement," the expression "policy period" meant the period during which the policy remained in force. If it remained in force for a full year, as issued, the "policy period" would be one year; but if it were canceled by either party before the expiration of one year from date of issue, as it was, the "policy period" would be the time the policy remained in force.

The body of the policy contained a space for specific description of vehicles covered thereby but same was not filled out. By the terms of "Gross Receipts Endorsement" the policy was made to cover all vehicles owned or operated by defendant though not specifically described. The premium for the "policy period" as stated in said endorsement was to be 2 per cent of the gross revenues earned by defendant during the time the policy was in force; but the *minimum* premium was to be not less than the sum of $242.57 per annum, per vehicle operated by defendant, pro rated as to each vehicle for the number of days said vehicle actually remained in operation.

Provision therein was made whereby defendant was to make monthly reports, furnishing all information needed for computation of premium, under either formula mentioned; and provision was made for auditing defendant's books by plaintiff at the end of the "policy period." Thereby plaintiff might determine the amount due it under either or both formulae.

If, when "M. Cancellation" and "Gross Receipts Endorsement" are read together, as they must be, an ambiguity exists as to the method of determining premium due, such ambiguity must be resolved in favor of the insured. [Spencer v. Farmers' Mutual Insurance Company of Sullivan County, Missouri, 65 S. W. (2d) 665, l. c. 666; State ex rel. Mills Lumber Company v. Trimble, 39 S. W. (2d) 355, l. c. 359.] In such event plaintiff was not entitled to recover under its theory of the case, which was that it was entitled to collect as provided in "M. Cancellation."

But the policy, when all of its provisions are read and construed together, is not ambiguous. "Gross Receipts Endorsement" is, for purposes of determining the premium due, an amendment of "M. Cancellation" and, insofar as the latter attempts to fix the premium due under the policy, it is a complete substitution therefor. By its terms plaintiff is entitled to collect, as premium, two per cent of the gross revenue earned by defendant during the period the policy remained in force; or it may collect on the basis of $242.57 per annum for each vehicle operated by defendant during the "policy period," pro rated on the number of days said vehicles actually operated. Plaintiff may elect to collect either of said amounts proved in the above manner.

Plaintiff's petition and evidence was on the theory that it was entitled to collect premium under the provision of "M. Cancellation." The judgment was based on findings in harmony with the petition and

236

plaintiff's evidence in support of its theory. It follows that the judgment is erroneous.

The judgment should be reversed and the cause remanded. *Boyer, C.*, not sitting.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded. *Bland* and *Cave, JJ.*, concur; *Shain, P. J.*, not sitting.