## Insurance Commissioner v. K. & W. Boat Transport Co., Inc.

*Laird & Buchen*, for plaintiff.

*Norman T. Petow*, for defendant.

ANDERSON, J., April 14, 1950.—In this suit in assumpsit brought by the Insurance Commissioner of the Commonwealth as the statutory liquidator of the Keystone Mutual Casualty Company, to collect unpaid premiums alleged to be due the insurance company from defendant for the period during which a policy issued by the company was in force, defendant has filed preliminary objections to plaintiff's complaint. Defendant does not contend that plaintiff may not collect for the period the policy was in force but objects to the method of calculation used to determine the amount due, and asserts that under the gross receipts method of calculation defendant has paid all that is due, while admitting that on the pro rata share basis of the minimum annual premium agreed upon, the additional amount claimed would be due. The question presented depends upon the interpretation and application of the terms of the original contract. The policy covered public liability and property damage for vehicles used in a transportation business and the portion of the contract relating to premiums reads as follows:

"It is hereby agreed that the Assured, upon delivery of his policy, shall pay a deposit premium of $1000.00 and monthly thereafter during the term of the policy on or before the 22nd day of each and every month, a premium of $300.00 as a further deposit premium. All premiums paid by the Assured to the Company are understood to be on account of the premiums due under the terms of this endorsement at the rate of $5.46 per $100 of gross receipts of the Assured as defined in this endorsement, and the Assured agrees by monthly or quarterly audit, as may be required by the Company, to pay any difference between such deposit premium and the amount of premiums due, based upon its gross receipts, promptly to the Company upon demand, failing which, the Company shall have the right to cancel its policy for non-payment of premium by the Assured and retain premiums received as deposit premium, the Assured remaining responsible for the due earned premium for the period in which the policy was in force. The Assured further agrees that irrespective as to the extent of its operations of automobiles and/or trailers, to pay to the Company a minimum annual premium of $2384.00 for the coverage extended under this policy, and that the deposit premiums paid to the Company during the term of this policy shall equal at all times the pro rata earned part of said minimum premium."

Since defendant admits that it owes premiums in some amount from October 22, 1946, the effective date of the policy, to June 26, 1947, when the policy was cancelled by reason of the insolvency of the insurer, the point to be determined is whether plaintiff may now elect to collect the pro rata share of the minimum annual premium or may collect only the amount due as calculated upon the gross receipts basis for the period. Nowhere in the policy is there any provision governing cancellations by either party.

There is no question that as to premiums unpaid at the time of insolvency or dissolution, policyholders are liable to the receiver for so much thereof as has been earned, but they are not liable for the unearned residue, that is, premiums for the unexpired term. See 44 C. J. S. 699, §129 (c) and cases cited thereunder. It is also generally recognized that ambiguities in the policy must be resolved in favor of the insured: Gnagey v. Pa. Thresh. and Farmers Ins. Co., 332 Pa. 193. But there is no ambiguity in this contract. The insured agreed to pay a minimum annual premium of $2384, regardless of the extent of its business operations, and further agreed to pay premiums at the rate of $5.46 for each $100 of gross business transacted as determined by monthly or quarterly audits. At the end of the year if the premiums calculated on the gross business done had not amounted to $2,384, insured would have been obligated to pay the difference. If, by the gross business calculation, the premiums amounted to more than $2,384, the insured would have been obligated to pay the additional amount due. That an additional amount over the minimum premium was contemplated by the parties is indicated by the provision in the policy that the insured agreed to pay an initial deposit premium of $1,000 and additional deposit premiums of $300 each and every month thereafter. Defendant argues that since there was a breach of the contract by the insurance company that it has been damaged and consequently the lesser rate should apply. As to that it is apparent that defendant also breached the agreement, for had it paid the $300 monthly as agreed, the pro rata share of the minimum annual premium would have been more than paid. The real answer, however, to the question posed regarding a breach is that if defendant has any action for the alleged breach of contract it would have to be asserted and determined in the insolvency proceedings. Another

provision of the contract which indicates clearly that it was the intention of the parties that the minimum premium or the pro rata share thereof was to be paid up in full each month by the insured is the closing sentence of the paragraph relating thereto as follows:

"The Assured further agrees that irrespective as to the extent of its operations of automobiles and/or trailers, to pay to the Company a minimum annual premium of $2384.00 for the coverage extended under this policy, and that the deposit premium paid to the Company during the term of this policy *shall equal at all times the pro rata earned part of said minimum premium.*" (Italics supplied.)

Counsel report a dearth of authority on the question here involved, probably due to the fact that in most instances the gross receipts basis of calculation usually exceeds the minimum premium, which might have been true in this case except that the policy had been in force during the winter months when defendant's boat transport business would probably be at a low ebb. There is one case, however, which tends to corroborate our conclusion that plaintiff is entitled to collect the pro rata share of the minimum annual premium. In Commercial Standard Ins. Co. v. Riss & Co., 238 Mo. App. 231, 179 S. W. (2d) 641, the question of the method to be used in calculating the premiums due upon cancellation of a liability insurance policy arose under circumstances somewhat similar to the case at bar. And while the case did not hinge on this point the court makes this significant statement:

"By its terms plaintiff is entitled to collect, as premium, 2% of the gross revenue earned by defendant during the period the policy remained in force; or it may collect on the basis of $242.57 per annum for each vehicle operated by defendant during the 'policy period,' prorated on the number of days said vehicles actually

operated. Plaintiff may elect to collect either of said amounts proved in the above manner."

It seems evident that the statutory liquidator of the insurance company under the terms of the policy here in question is entitled to bring suit for the pro rata share of the minimum annual premium for the period during which the policy was in force and we therefore enter the following order:

And now, to wit, April 14, 1950, it is ordered, adjudged and decreed that defendant's preliminary objections to plaintiff's complaint filed January 21, 1950, are overruled and dismissed. Defendant is given 20 days to file an answer if desired.