THE STATE EX REL. MILLS LUMBER COMPANY v. FRANCIS H. TRIMBLE ET AL., Judges of Kansas City Court of Appeals.—39 S. W. (2d) 355.

Division One, May 21, 1931.*

*NOTE: Opinion filed at October Term, 1930, March 31, 1931; motion for rehearing overruled at April Term, May 21, 1931.

900

*John C. Mills, John Campbell* and *M. D. Campbell* for relator.

*Philip J. Fowler* and *Hunter & Chamier* for respondents.

RAGLAND, J.—This case comes to the writer for an opinion on reassignment. It is an original proceeding in certiorari wherein relator seeks to have quashed, on the ground of conflict, the opinion and judgment of the Kansas City Court of Appeals in the case of Mills Lumber Company, respondent, v. Aetna Life Insurance Company, appellant, recently before that court on appeal. The facts disclosed by the opinion, from which we shall quote in part, are as follows:

"This is an action on an insurance policy. . . .

"Rosie Cramer brought suit against the Mills Lumber Company, and in her petition alleged that she was the wife of Abe Cramer, deceased; that her husband was an employee of the Pittsburgh-Des Moines Steel Company, which company was engaged in the erection of an elevated steel tank at La Plata, Missouri; that it was necessary to construct a scaffold under the base of the tank at a height of approximately 125 feet above the ground; that a short time prior to his injury plaintiff's husband went to the defendant at its office in La Plata, Missouri, and explained to the defendant and its agents the purpose and plans for building such scaffold and the use which was to be made of it, and that plaintiff's husband and others would go upon the scaffold far above the ground, and work thereon, that fresh, clear, sound lumber was required and needed to safely support the weight of the workmen and their tools and equipment in carrying on their work; that defendant undertook to furnish such lumber, but carelessly and negligently furnished defective, unsound, and old deteriorated lumber, which was wholly unfit for the use and purposes intended; that the scaffold broke and gave way, due to the defective and inferior quality of the lumber, and as a result the plaintiff's husband was killed. Plaintiff prayed judgment for the sum of $10,000. . . .

"Mills Lumber Company gave notice of the suit to the insurance company and called upon it to defend. It refused to do so. . . . Mills Lumber Company then successfully defended the suit and thereafter instituted this action to recover the amount expended in the defense of the suit for wrongful death."

The Insurance Company denied liability on the ground that the casualty did not occur on the premises where the assured conducted

its business in La Plata, Missouri. Whether the death, which was suffered at La Plata but not at the premises of the assured, was a casualty covered by the policy called for a construction of certain of its terms and provisions. The rulings of the Court of Appeals in connection with its interpretation of such terms and provisions are the ones of which complaint is made in this proceeding.

The pertinent provisions of the policy in question are as follows: "Aetna Life Insurance Company, Accident and Liability Department, Manufacturers Public Liability policy.

"Insuring Clause.

"IN CONSIDERATION of the premiums provided, the Aetna Life Insurance Company of Hartford, Connecticut (called the Company).

"Does Hereby Agree to Indemnify the Assured described in the Warranties hereof, within the amounts as expressed herein, Against Loss and/or expense Arising or Resulting from Claims Upon the Assured for Damages on account of bodily injuries and/or death accidentally suffered, or alleged to have been suffered, by any person or persons not employed by the Assured, by reason of the business described and conducted at the location named in said Warranties, whether said injuries and/or death are accidentally suffered, or alleged to have been suffered, at the locations named or elsewhere, save and except claims arising by reason of: [four exceptions are here set out.]

"Subject to all agreements and conditions hereof, claims are covered whenever arising, on account of accidents or alleged accidents occurring within the Policy period stated herein. [Here follow a series of separately stated conditions.] "
Condition "M" is as follows:

"No condition or provision of this policy shall be waived or altered except by written endorsement attached hereto and signed by the . . . secretary . . . of the Company." Under said subhead "M" there are a number of "endorsements," among others, the following:

### "ENDORSEMENT.

"It is hereby understood and agreed that this policy does not cover claims for injuries and/or death arising from the consumption, handling or use, elsewhere than at the location or premises named in the Warranties, of any article or product, manufactured, handled or distributed by the assured.

"(Signed) E. C. HIGGINS, Secretary."
Condition "P":

"The following Warranties numbered 1 to 11, inclusive are hereby made a part of this contract. . . .

"Warranties.

"1. Name of Assured: Mills-Arnold Lumber Co. Arnold-Mills Lumber Co., Pike County Lumber and Supply Co., Marceline Lumber Co., and the Mills Lumber Co.

"2. Address of Assured: Kirksville, Missouri. (Name, Street, Town, County and State where Head Office is located.)

"3. The Assured is: Corporation (one ownership). . . .

"4. Classified description of the business: . . . All operations incidental to the following business, including repairs and alterations usual and necessary to the care and maintenance of the premises and/or plant.

"Lumber yards and building material dealers—no second hand material—(including drivers, chauffeurs and their helpers)— . . . Town, Street and Number where business is located—Kirksville, Missouri; Chillicothe, Missouri; Louisiana, Missouri; La Plata, Missouri; Marceline, Missouri.

"5. The foregoing statement correctly describes the business to be insured, including all usual or special operations incident thereto, and the locations at which said business is conducted. . . .

"9. The policy period shall be Twelve Months beginning on the 18th day of March, 1925, at 12:01 A. M. and ending on the 18th day of March, 1926, at 10:01 A. M., standard time at the location of the business described in the Warranties hereof."

In the Court of Appeals the controversy centered about the effect, if any, that should be accorded the "Endorsement." Respondent contended: (1) that it was in direct conflict with the "insuring clause," and for that reason should be excluded under the rule that where a contract of insurance contains repugnant provisions the one most favorable to the insured must be given effect; and (2) that, if the "Endorsement" be given effect, the word "premises" must be excepted because no such term is used in any of the "Warranties" referred to.

With respect to the first the Court of Appeals said:

"Appellant contends that plaintiff cannot recover because the expense for which recovery is sought was incurred in defending a suit wherein a man had been killed in handling or using articles that were handled and distributed by the assured, and the injury resulting in death was not incurred upon the premises or at the location *of the business* of the assured. This contention is based upon the endorsement which provides that the policy does not cover claims for death arising from the consumption, handling, or use elsewhere than at the location or premises named in the warranties of any article or produce manufactured, handled, or distributed by the assured. Respondent claims that the policy provided for indemnity against expense arising or resulting for claims upon

the assured and damages on account of death alleged to have been suffered by reason of the business described and conducted at the location named in the warranties alleged to have been suffered at *the location named or elsewhere.* It is said that this provision is inconsistent with the endorsement; that both cannot be enforced, and therefore that clause should be enforced which is most favorable to the assured. The provision relied upon by respondent is general. The endorsement relied upon by the insurance company is specific and purports to restrict the general language of the policy in so far as it applies to particular risks. . . . The general clause and the endorsement when read together mean that the insurance company agreed to indemnify the assured against loss or expense or both arising or resulting from claims upon the assured for damages on account of bodily injuries, death or both, suffered or alleged to have been suffered by reason of the business described and conducted at the locations named in the warranties, whether suffered or alleged to have been suffered at the locations named, or elsewhere; except, however, that the policy does not cover claims for injuries or death or both arising from the consumption, handling or use elsewhere than at the location or premises named in the warranties of any articles or produce manufactured, handled or distributed by the assured.''

The second was disposed of by the Court as follows:

''It is contended by the respondent that the word 'premises' is not used in the warranties and that the only locations mentioned are Kirksville, Chillicothe, Louisiana, La Plata and Marceline. There is no contention that plaintiff met his death or that the scaffold was constructed upon the premises of the assured, but it is claimed that the scaffold was constructed and that Cramer met his death in La Plata; that he was therefore at one of the locations named in the warranties. We do not agree with this contention. The rule that a written contract must be strictly construed against him who framed the instrument is a rule for resolving ambiguities. It is a recognition of the just principle that one may not choose language susceptible of two meanings for the purpose of inducing another to contract with him, and then when the question of liability arises insist upon the construction which is favorable to himself although the other party might well have been induced to contract by a well founded belief that the instrument expressed a different agreement. But if the intent is manifest from the language employed, then there is no occasion for the application of the doctrine, even though the instrument is awkwardly worded so that it is possible, by a strained and literal construction, to defeat the apparent intent of the parties. . . .

''We think it is plain that the endorsement which excluded claims for injuries or death arising from the consumption, handling, or

906

use elsewhere than at the location or premises named in the warranties of any article or product handled or distributed by the assured excluded claims arising from the handling or using of lumber sold by the assured at any place other than the premises occupied by the assured in the conduct of its business. Under the head 'Warranties' the printed form leaves a blank place to be filled in under the head 'classified description of the business.' It then leaves another blank under the head 'town, street and number where business is located.' This plainly indicates that the standard form adopted by the company was intended to be so filled out as to indicate the exact location of the assured's place of business. It is true that the lumber yard in question was only described as being at La Plata, Missouri. No doubt this was sufficient to identify the particular place of business which was within the contemplation of the parties due to the fact that La Plata is a small city. The fact that it was not necessary to insert the street and number in order to identify this particular place of business does not militate against the idea that the location or premises referred to was the real estate occupied by the assured in the prosecution of its business. If the blank had been filled in with a recitation that the business was located at 200 Pine Street, La Plata, Missouri, but the evidence had shown that the business office of the assured was on the lot so numbered, and that the entire lumber yard included the lots 200, 202 and 204 Pine Street, we would not hesitate to hold that an injury occurred at the location or premises named in the warranties, although the act complained of occurred on the lot numbered 204 Pine Street. On the other hand, if the lumber yard recited to be at La Plata, Missouri, and because of the size of the town and the prominence of the business, or for any other reason, the street number was omitted, it is still true that it is the place of business of the assured which is referred to in the endorsement by the language 'the location or premises named in the warranties.' There are other references to the location contained in the language under the title 'Warranties.' They fortify our conclusions. . . .''

It is not contended by relator that this court has ever construed the identical contract that was before the Court of Appeals. It does not attempt to point to a "gray mule case" as engendering contrariety of decision. It bases its claim of conflict on the alleged failure of the Court of Appeals to apply in the construction of the insurance contract in question the general principles which have been employed by this court in construing similar contracts. We shall therefore consider the rulings complained of from that angle. [State ex rel. v. Reynolds, 226 S. W. 550, 553.]

The first ruling is: That there is no repugnancy between the "insuring clause" and the "Endorsement;" that both may be read

together and given effect,—the first as creating a general liability and the second as operating merely to restrict or limit that liability. This is so obvious that elaboration is unnecessary. The principle invoked by relator, namely, that where there are inconsistent provisions in a contract of insurance the one most favorable to the insured must be given effect, is clearly without application as regards the clauses just referred to.

The second ruling cannot be so easily disposed of. In the fourth Warranty the assured's business and all operations incidental to it are described as "Lumber Yards and building material dealers. . . . —including drivers, chauffeurs and their helpers." It is further said that the business was located at "La Plata, Missouri." (The other towns named may be eliminated as in no way bearing upon the construction called for by the facts of the case before the Court of Appeals.) The fifth Warranty recites: "The foregoing statement correctly describes the business to be insured, including all usual or special operations incident thereto, and the location at which said business is conducted." The "premises" at which the assured's business was conducted in the town of La Plata, Missouri, is no where mentioned or described in the fourth or any of the other Warranties. It would seem to follow that the language of the "Endorsement": "the location or premises *named in the Warranties*," according to its literal reading, in connection with that of the "Warranties," means neither more nor less than "La Plata, Missouri." Making the substitution, the "Endorsement" reads:

"It is hereby understood and agreed that this policy does not cover claims for injuries and/or deaths arising from the consumption, handling or use elsewhere than at La Plata, Missouri, of any article or product, manufactured, handled or distributed by the assured." As so construed the "Endorsement" limits the insurer's liability with respect to the casualties therein described to such of them as occur at La Plata, Missouri.

The Court of Appeals rejected a strict or literal construction of the provisions just referred to in favor of a construction which it conceived would more nearly carry out the purpose and intent of the parties, and at the same time invest the word "premises" with a separate and independent function. In doing so it in effect interpolated before the words, "La Plata, Missouri," in the fourth Warranty, the words, "the premises occupied by the assured as a lumber yard in." The effect of such an extremely liberal construction, as is apparent, was to greatly enhance the limitation imposed by the "Endorsement" on the insurer's liability. It excluded from the coverage of the policy all of the casualties described in the "Endorsement," except those *which occurred in the assured's lumber yard in La Plata, Missouri.*

"Speaking to insurance contracts, it is a just and settled rule that their restrictive terms shall be taken most strongly against the insurer. The doctrine of *contra proferentem* is strictly applied with unaccommodating vigor, and, as said, ambiguities are blandly resolved in favor of the insured. So that, if the contract in suit is open to two constructions, one favorable to the insured and one not, if the insured has acted on the favorable construction, courts will take this view of the contract—being always mindful that the principal obligation (the very life and soul) of a policy is to pay the policy face when the contingency or event happens upon which payment is predicated.

. . .

"Policies are contracts, elaborately and shrewdly prepared in advance by calculating and astute experts. They are tendered, ready-made, to and accepted out of hand by plain people, the uninformed and unlearned, the unwary and confiding. Insurance policies swarm with intricate technical provisions, stipulations, exceptions, conditions, provisos, limitations, hedging liability about and looking to its avoidance. It is not singular then that courts incline to pit judicial astuteness against the astuteness of the policy-maker, the latter planting forfeitures in ambush or open, and the former striving to avoid them." [Matthews v. Modern Woodmen, 236 Mo. 326, 342, 343, 344, 139 S. W. 151.]

"Conditions and provisions in policies are to be construed strictly against the company as they tend to narrow the range and limit the force of the principal obligation. Conditions providing for disabilities and forfeitures are to receive, where the intent is doubtful, a strict construction against those for whose benefit they are introduced. . . .

"It is elemental that if a contract of insurance is capable of two meanings, that meaning must be adopted which is most favorable to the insured. [Wharton on Contr., sec. 670; Bliss on Ins., sec. 385; Cook on Ins., sec. 4.] And so we have declared it to be a rule of construction in cases where there is a doubt in respect to the meaning of the terms of a clause in an insurance policy that the doubt must be resolved in favor of the interpretation of the assured, although intended otherwise by the insurer." [Renn v. Supreme Lodge K. of P., 83 Mo. App. 442, 447, 449, cited by this court with approval in Matthews v. Modern Woodmen, supra, and other cases.]

"The provisions in a policy limiting or avoiding liability, must be construed most strongly against the insurer." [St. Louis Court of Appeals in Howell v. Life Ins. Co., 215 Mo. App. 692, 253 S. W. 411, approved by this court in State ex rel. v. Allen, 305 Mo. 607, 614, 267 S. W. 679.]

If the Insurance Company had intended to limit its liability for the deaths and injuries described in the "Endorsement" to such of them as occurred in assured's lumber yard in La Plata, Missouri, it was incumbent upon it to have manifested that intention in clear and unambiguous terms. [Dolph v. Maryland Casualty Co., 303 Mo. 534, 548, 549, 261 S. W. 330.] Having failed to do so, it cannot complain if the ambiguities be resolved against it.

The principles announced in the foregoing excerpts from our cases were so obviously applicable in the construction of the insurance contract which the Court of Appeals had before it that its failure to invoke them must be regarded as engendering a conflict of decision. The opinion and judgment exhibited by the record under review are therefore quashed. All concur.