MAUDE S. CORDER v. MORGAN ROOFING COMPANY, a Corporation, Appellant, ELMER H. DALE, Defendant.—No. 38020.—166 S. W. (2d) 455.

Division One, November 10, 1942.

Rehearing Denied, December 1, 1942.

*Ewing, Ewing & Ewing* and *Lynn M. Ewing* for appellant.

*Dan Z. Gibson, W. T. McCaffree* and *Sizer & Myres* for respondent.

384

BRADLEY, C.—Plaintiff filed suit against the Morgan Roofing Company, a corporation, and Elmer H. Dale, to recover damages for personal injuries. She obtained a verdict and judgment against

both defendants for $10,000. Defendant Morgan Roofing Company alone appealed.

Plaintiff was injured in a collision between the automobile in which she was riding and an automobile owned and driven at the time by defendant Dale. There is no claim that plaintiff was in any way at fault, and neither is there any claim made here that her injuries were not caused by the negligence of Dale. Hence, it will not be necessary to deal with the grounds of negligence upon which the cause was submitted and the evidence pertinent thereto.

The sole questions here are whether Dale was an employee of the corporate defendant at the time of plaintiff's injuries, and was, at the time, acting within the scope of his employment. We might state here that neither defendant offered any evidence. At the close of plaintiff's case the corporate defendant announced that it would offer no evidence, but it offered and was refused an instruction in the nature of a demurrer to the evidence. Defendant Dale did not offer such an instruction, but announced that he would offer no evidence.

Plaintiff was injured December 5, 1936, about 3 miles east of Carthage, Missouri, on highway 66. The car in which she was riding was travelling east and the Dale car was travelling west. On the day plaintiff was injured and for several years prior thereto, Dale had been a regular employee of the corporate defendant and "his regular pay was $1 an hour when he worked." Dale's general duties were to supervise and direct the building and repair work undertaken by the corporate defendant. The men on the job were under his direction; he paid them and kept records and made reports to his employer. In these reports he was required to set out the progress of the work, the number of men working, time put in by the men, their hourly and weekly pay, and the amount of material used. He usually made these reports when he returned on Saturdays to the office of the corporate defendant in Joplin, Missouri. On many occasions the corporate defendant sent Dale out of Joplin, and on many of these trips he used his own car, to the knowledge of his employer. However, his employer did not pay all expenses incident to the use of Dale's car on these trips, but paid him an amount equal to the "train fare to and from the particular town where the work was." There was also evidence tending to show that, on occasions, Dale was furnished gasoline for trips.

Defendant Morgan Roofing Company had a roofing job at Marshall, Missouri, and on Sunday, November 29, 1936, Dale, under instructions from his employer, left Joplin and drove in his car to Marshall, to act as foreman on the job. Dale testified that on this trip the Morgan Roofing Company paid him for car expenses, the equivalent of train fare from Joplin to Marshall and back to Joplin. Plaintiff read in evidence Dale's deposition, and on the subject of the use of his car and the pay he received from his employer in the way of ex-

penses, he testified that train service in and out of Joplin was inconvenient; that he could make better time by using his car; that he was to be paid "railroad fare, not car expense"; that he was paid "the equivalent of the railroad fare. Q. And you got that on account of the use of your car? A. I didn't get it, I just took my own choice in going in my car. I was paid train fare and I was paid train fare because I had used my car going to Marshall and back."

On Saturday, December 5, 1936, date of plaintiff's injuries, Dale attempted to call, by telephone from Marshall to Joplin, Clarence V. Welch, vice president of the corporate defendant, to ascertain whether he, Dale, should return to Joplin or remain in Marshall. He was not successful in getting Welch, but did get L. E. Morgan, president of the company, and Morgan told him "to do what he pleased about coming in." Welch testified that before he had "any knowledge of the accident" he knew that Dale "was coming in"; that he knew this "after talking to Mr. Morgan", but that "Mr. Dale was not in the habit of coming in on Saturday nights when he was on long trips like that one."

Plaintiff contends that at the time of the collision and her injuries Dale was on his way to the office of his employer to make a report of the work at Marshall. On this subject Dale testified as follows: "Q. And if you hadn't had the accident at 4:00 o'clock or some time along there you would have been in the office around 5:00 o'clock? A. Yes. Q. You would have made your report when you got in there? A. That is right. I would have talked with Mr. Welch and Mr. Morgan about the progress of the work and the materials that were needed and the amount of labor that was needed and if we needed any extra men and what materials were to be used. I called Mr. Morgan before I left Marshall that day. I told him that the weather was bad and it didn't look like we were going to get to work for a few days, and he said I am going to leave it to your own judgment whether you come or whether you don't come in. I used my own judgment in determining to come. I use my own judgment as to things like that when he leaves it to me."

It is contended that Dale was an independent contractor so far as concerned the use of his car. In the brief it is stated: "The evidence showed that in the use of his car Dale was not directed or controlled by appellant, nor did appellant reserve the right to direct or control its use, therefore, Dale was not the servant of appellant at the time and place of collision. . . . The evidence clearly disclosed that Dale was an independent contractor in so far as his transportation was concerned, and therefore, appellant is not liable for his torts." To support such contention the corporate defendant cites Riggs v. Higgins et al., 341 Mo. 1, 106 S. W. (2d) 1; Vert v. Met. Life Ins. Co., 342 Mo. 629, 117 S. W. (2d) 252, 116 A. L. R. 1381; Klotsch v. P. F. Collier & Son, 349 Mo. 40, 159 S. W.

(2d) 589; Skidmore v. Haggard et al., 341 Mo. 837, 110 S. W. (2d) 726; Dorsett v. Pevely Dairy Co. (Mo. App.), 124 S. W. (2d) 624; State ex rel. Chapman v. Shain et al., 347 Mo. 308, 147 S. W. (2d) 457; Bass et al. v. Kansas City Journal-Post Co., 347 Mo. 681, 148 S. W. (2d) 548; Restatement of the Law of Agency, pp. 538, 540, 559, 560.

Section 239, Restatement of the Law of Agency, reads as follows: "A master is not liable for injuries caused by the negligence of a servant in the use of an instrumentality which is of a substantially different kind from that authorized as a means of performing the master's service, or over the use of which it is understood that the master is to have no right of control."

Illustration 4, under section 239 of the Restatement, follows: "The master agrees with A, his servant, to pay for A's transportation upon public vehicles such as railway trains and street cars, A being permitted to use his own automobile for transportation, charging to the master the regular train fare. A is paid by the week, with indefinite hours of labor. In going to a place at which he is to perform work for the master, A drives his own car, carrying thereon necessary tools and materials belonging to the master. In the absence of evidence that A owes P any duty of obedience in the details of operating the automobile, such driving is not within the scope of employment."

Counsel, in the brief, say that the illustration quoted "almost fits the facts in our case except there were no tools or materials in Dale's car at the time of the collision", and appellant in the brief, says that the rule announced in Restatement of the Law of Agency has. been followed in the Riggs case, supra. It is stated in the Riggs case [106 S. W. (2d) 1. c. 3] that "if the master cannot command the servant, the acts of the servant are clearly not his. He is not master, for the relation implied by that term is one of power, of command; and if a principal cannot control his agent, he is not an agent, but holds some other or additional relation. In neither case can the maxim *respondeat superior* apply to them, for there is no superior to respond." In the Bass case, supra [148 S. W. (2d) 1. c. 552], subdivisions 2 and 3 of Sec. 2, p. 11 of the Restatement of the Law of Agency is quoted with approval as follows:

(2) "A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master. (3) An independent contractor is a person who contracts with another to do something for him, but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking."

Under the facts here, Dale was clearly an employee and there is no question of independent contractor involved. The question is: Was the trip from Marshall the employer's trip, or was it the em-

ployee's trip? McMain et al. v. J. J. Connor & Sons Construction Co. et al., 337 Mo. 40, 85 S. W. (2d) 43.

The facts in the Riggs case and other cases cited by appellant are distinguishable from the facts in the present case. Here, there is nothing in the evidence to show as a matter of law that Dale had any purpose of his own in making the trip to Joplin. Certainly, without a conclusive showing of some main purpose of his own for making the trip, we cannot say as a matter of law that the making of his report on the progress of the work, etc., was merely incidental to a trip of his own. Therefore, there would be a jury question as to whether it was a trip for his employer's purposes. We do not think that the illustration quoted from the Restatement is applicable to the present facts, because Dale was not merely on his way to his work under an arrangement to pay for his transportation, but he was on his way to his employer's office at a time when it is at least a reasonable inference from the evidence he would not have come for purely his own purposes. Also, there is substantial evidence to show that this trip which caused plaintiff's injury was not only to make a report about what had been done, which could have been sent by mail, but also to discuss in a personal conference with the officers of the Roofing Company the future progress of the work and to decide what additional men and materials would be necessary to complete it.

Since Dale was in the general employment of the Roofing Company and the evidence was such that the jury could infer that at the time of the collision Dale was in the discharge of his duties to his employer under such employment, the question as to whether the employer had the right to control at the time of the collision was certainly for the jury.

Brauch v. Skinner Bros. Mfg. Co., 330 Mo. 760, 51 S. W. (2d) 27, was a workmen's compensation case. In that case it appears that deceased employee was a mechanic in the defendant's plant in St. Louis. He was frequently required to work outside of the city, and when required to go out of the city, his mode of travel was left entirely in his discretion. His employer knew that he usually travelled by automobile and advanced him travelling expenses, based on railroad fare. At the time the employee was killed he was in his automobile and on his way from his employer's place of business to an outlying town to do work for his employer. It was held that at the time of the accident resulting in the death of the employee such employee was the servant of his employer and was within the scope of his employment.

In Schmitt v. American Press·et al. (Mo. App.), 42 S. W. (2d) 969, l. c. 972, it is stated: "No hard and fast rule can be laid down by which it would be possible to determine in every instance whether the driver of a motor vehicle, in the general employ of another, was acting within the scope of his employment at a given time, but rather

each case is to be decided largely upon its own facts, merely keeping in mind the basic idea that the use of the vehicle at the time must have been in the service of the employer, or while about his business. Borah v. Zoellner Motor Car Co. (Mo. App.), 257 S. W. 145; Wrightsman v. Glidewell, 210 Mo. App. 367, 239 S. W. 574. Of course, it makes no difference upon the question of the employer's ultimate liability that the vehicle may belong to the servant himself, provided only that the servant was driving it at the time with the actual or implied consent of his employer, and in the discharge of the duties owed by the servant to him'', citing Margulis v. National Enameling & Stamping Co., 324 Mo. 420, 23 S. W. (2d) 1049; Burgess v. Garvin, 219 Mo. App. 162, 272 S. W. 108; Gordner v. St. Louis Screw Co., 201 Mo. App. 349, 210 S. W. 930.

Under the facts it is our conclusion that the questions as to whether Dale, at the time of the collision causing plaintiff's injuries, was in the service of the corporate defendant, and was, at said time, within the scope of his employment, were for the jury. Such questions were submitted to the jury, and there is no complaint as to the manner of submission. Reaching such conclusion, it follows that the judgment should be affirmed, and it is so ordered. *Hyde* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur except *Hays, J.*, absent.