J. S. CORDER and MAUDE S. CORDER v. MORGAN ROOFING COMPANY, a Corporation, Defendant, and BITUMINOUS CASUALTY CORPORATION, a Corporation, Appellant.—Nos. 39656 and 39657.—195 S. W. (2d) 441.

Division One, June 10, 1946.

Rehearing Denied, July 8, 1946.

*F. H. Richart* and *Bruce Barnett* for appellant.

130

*William T. McCaffree, Edward Sweeney* and *Wm. J. B. Myres* for respondents.

HYDE, P. J.—Two garnishments, on two separate judgments for personal injuries against defendant, were consolidated and tried together to a jury in Circuit Court. Verdict and judgment were for plaintiffs jointly for the total sum of $21,652.41. Garnishee has appealed. The question herein involved is the coverage of the public liability insurance which defendant obtained from Garnishee.

Plaintiffs were injured in a collision on U. S. Highway 66 between their automobile and another motor vehicle operated by Elmer H. Dale, an employee of defendant. Maude S. Corder obtained judgment against defendant for $10,000.00 which was affirmed by this court in Corder v. Morgan Roofing Company, 350 Mo. 382, 166 S. W. (2d) 455. J. S. Corder obtained judgment for $3,832.75 which included damage to his automobile. Garnishee was asked to defend these suits but refused on the ground that its policy did not cover liability for damages done by a vehicle on a public highway.

Garnishee issued its Public Liability Policy No. 3116 to defendant in April 1935. This policy provided for insurance, as follows: "To Pay all sums which the Assured shall become liable to pay as damages imposed by law for bodily injuries, including death resulting therefrom, accidentally suffered or alleged to have been suffered, during the policy period defined in Special Condition 6, by any person or persons not employed by the Assured while within or upon the premises described in Special Condition 4 (or upon the sidewalks or other ways immediately adjacent thereto), or while otherwise about the work of the Assured, and caused by reason of and during the progress of the business operations described in Special Condition 4. . . . Provided Also, that the Company shall not be liable in respect of bodily injuries . . . caused by any draught or driving animal or vehicle, owned or used by the Assured or by any person employed by the Assured while engaged in the maintenance or use of same elsewhere than upon the premises described in Special Condition 4 . . .

"Special Conditions.

"4. A complete description of the Assured's trade or business covered by this policy, the places where such trade or business is conducted . . . are as follows:

| "Description of the Trade or Business covered by this Policy | : : : | Places where such Trade or Business is Conducted |
|---|---|---|
| "(a) Roofing—all kinds—including yard employees. #5551 | : : : : | 623 Joplin St., Joplin, Missouri, and elsewhere in the State of Missouri." |

The liability under this policy was stated to be $5000.00 for one person and $10,000.00 for one accident. The policy was for no definite term and the premium was to be fixed by payroll audit. This policy was obtained through W. E. Ludwig, an insurance broker in Kansas City. He testified that he procured the policy through C. F. Crist and Company who represented Garnishee. He said that he procured other policies for other clients from C. F. Crist and Company during the years 1935 and 1936. Defendant's business was building roofs on residences, business and public buildings, which was done mainly in southwest Missouri. Defendant used automobiles and trucks to haul men and materials from Joplin to the places where their roofing work was being done. Defendant also bid on 40 or 50 P.W.A. contracts, and was awarded between 15 and 20. Some of these were at Nevada, Marshall, Chillicothe and Jefferson City. P.W.A. had the following regulation concerning insurance: "Adequate Public Liability and Property Damage Insurance to protect such contractor and all of his construction subcontractors from claims for damages for personal injury, accidental death, and to property, which may arise from operations under his contract, whether such operations be by himself or by any such sub-contractor or by anyone directly or indirectly employed by either of them." It required such public liability insurance to cover $10,000.00 for one person and $20,000.00 for one accident.

Defendant took up with Mr. Ludwig the matter of compliance with these requirements. He obtained certificates from Crist and Company for each P.W.A. contract awarded to defendant to show such compliance. In 1934, the State of Missouri began a building program for improvement of state institutions which was financed in part with P.W.A. funds. This was administered by a Bi-Partisan Board and all contracts made by this Board were required to have P.W.A. approval. Such a contract for two custodial cottages at the State School for Feeble Minded at Marshall was let to Willems and Childers Construction Company. This contract was called P.W.A. Docket No.

5131-L-2, and defendant was the subcontractor for roofing these cottages. It procured through Mr. Ludwig thirteen copies of the following certificate:

### "CERTIFICATE OF INSURANCE

"This is to certify that the following described policies covering as stated, have been issued by the Bituminous Casualty Corporation, and are now in force at this date.

"Name of Assured Morgan Roofing Company

"Description of Work Covered Complete coverage within the limits stated for the type of insurance mentioned, covering all of the assured's operations in connection with the assured's contract on P.W.A. Docket No. 5131-L-2

"Place Where Work is to be Done Marshall, Missouri

"Details of Policies in force:

"Workmen's Compensation
No. WC 21016 ..........................Expiration 4-29-37
"Public Liability ........(One Person, $10,000)
No. PL 3116 Limits ( Expiration 4-29-37
(One Accident, $20,000)
PD 3116 5,000 · 4-29-37
"Contractors' Protective
Liability ..............(One Person $......)
No ........ Limits ( Expiration..* * *
(One Accident, $......)

 "Dated this 8th day of July, 1936.

 "Bituminous Casualty Corporation.

 "By C. F. Crist & Co. C. F. Crist, Jr.''

Copies of this certificate were filed with the Missouri Bi-Partisan Board and with the P.W.A. and an approved copy was sent to the General Contractor. This was necessary before defendant could commence work on the job. Dale was defendant's foreman on this work and, as we held in the Maude S. Corder case (350 Mo. 382, 166 S. W. (2d )455) was properly found to be in defendant's service within the scope of his employment at the time of the collision.

Plaintiffs introduced correspondence with Crist and Company concerning certificates on P.W.A. jobs, in part as follows:

April 14, 1936, C. F. Crist and Company by J. Stark to Morgan Roofing Company:

"As requested in your letter to Mr. Ludwig, we are enclosing herewith certificates of insurance. Also enclosed please find Indemnity Agreement, which we would appreciate your signing and completing in triplicate, and returning to us at your earliest convenience."

April 16, 1936, Morgan Roofing Company by C. V. Welch to C. F. Crist and Company:

"We have taken this (indemnity) agreement up with our attorney for his interpretation and he advises us that in the event we sign this agreement, we have no insurance whatsoever on these P.W.A. jobs, so in accordance with his interpretation and our understanding of same, we do not care to sign this agreement."

April 28, 1936, C. F. Crist and Company by J. Stark to Morgan Roofing Company:

"Answering your letter of April 16, 1936, in connection with Indemnity Agreement which we asked that you sign and return to us, if you will check over the certificates which we have issued you will find that these certificates cover your P.W.A. job without limitations, provisions of any kind; by this we mean that the interpretation of the U. S. Government on certificates issued on P.W.A. jobs is such that claims, whether covered or not by the original policy must be acknowledged by the insuring company. It is not the intent of these indemnity agreements to exclude coverage on the job, only to limit the coverage in accordance with the provisions, terms, and conditions of the policies.

"Every policy has certain requirements and provisions which the assured must abide by; and also there are limitations to the type of claim covered. These conditions are all swept aside by the certificate which we issue on P. W. A. jobs, and the U. S. Government has even construed a certificate on a P.W.A. job to cover automobile liability, inasmuch as coverage was shown thereon for public liability."

July 10, 1936, C. J. Crist and Company by J. Stark to W. E. Ludwig:

"We have recently furnished to you certificates of insurance in connection with the above assured's policies containing a clause reading as follows: 'Complete coverage within the limits stated for the type of insurance mentioned, etc.'

"It is not the intent of our policy to cover automobile liability or teams public liability and inasmuch as the clause contained on this certificate has been interpreted by the P.W.A. authorities as providing such coverage, it is necessary that this assured complete and sign the attached indemnity agreement which form will serve as an indemnity to the Bituminous Casualty Corporation in the event that this assured operates teams and motor vehicles away from the premises where the work is being performed and claim resulting from such operations is presented for payment. Please take this matter up with your assured and have this agreement completed and returned to us at your earliest convenience."

July 21, 1936, Morgan Roofing Company by C. V. Welch to C. F. Crist and Company:

"We have your letter of July 10 to Mr. W. E. Ludwig and Indemnity Agreement blank which he forwarded to us. We have taken this

matter up with our attorney, and he advises us that this agreement is not definite and that to sign same we would be in difficulty.

"If you can write an Indemnity Agreement that would be definite as to just what you exclude, we would be glad to take same under advisement.

"It would be a more satisfactory arrangement for us to pay an additional premium for our work on P.W.A. jobs only and you cover us under all requirements that are laid down by P.W.A. authorities as they intend your certificate of insurance to cover."

Thereafter an auditor of Garnishee made an audit of defendant's payrolls for the period of April 29, 1936 to April 29, 1937. On the basis of this audit dated May 4, 1937, defendant paid it a premium of $1161.87. The Secretary of the State Bi-Partisan Board which supervised the building program and the Chief Engineer of the P.W.A. both testified concerning their public liability insurance requirements and their acceptance and approval of the certificate on the Marshall contract.

Garnishee contends that its motion for a directed verdict should have been sustained. It says that plaintiff failed to make a case claiming that the policy cannot be construed to cover injuries on a public highway (arguing that the use of the word "premises" excludes this); that the policy could cover only injuries at 623 Joplin Street or at other places of business of defendant of like character (invoking the rule of ejusdem generis); that the certificate applied only to the contract on P.W.A. Docket No. 5131-L-2, which it claims was not identified with Dale's trip on which the collision occurred; that the certificate was not an instrument or contract of insurance but a mere statement; that the certificate was addressed to the general contractor and was not intended for the benefit of anyone else; that even if the certificate could be considered an insurance contract it would be subject to the conditions stated in the policy; and that the policy did not cover property damage or provide coverage in excess of $5000.00 damages to one person. Garnishee further contends that there was no evidence that the certificate was executed by C. F. Crist and Company or that the correspondence above referred to was with anyone with authority to represent C. F. Crist and Company or even that C. F. Crist and Company had authority to execute the certificate for Garnishee.

Considering these last contentions first we find that the original policy was countersigned by C. F. Crist and Company as Garnishee's authorized representative. All of the above letters were written on stationery at the top of which appears Garnishee's name, home office address and officers. Below this appears "C. F. Crist and Company, General Agents, 220 Elmhurst Building, Kansas City, Mo." On March 30, 1935, February 28, 1936, and February 26, 1937, Garnishee filed with the Missouri Insurance Department documents

entitled "Appointment of General Agent for the State of Missouri" in each of which it was stated that Garnishee appointed C. F. Crist and Company General Agent within and for the State of Missouri with full power and authority to receive all process and papers in suits against Garnishee served on the Superintendent. The term "General Agent" has a well understood meaning in insurance law, and an agent who has authority to sign, countersign and issue policies is a general agent. [See Gaines v. Berkshire Life Ins. Co., 228 Mo. App. 319, 68 S. W. (2d) 905; Union Automobile Indemnity Assn. v. Reimann (Mo. App.), 171 S. W. (2d) 721.] The above letters were received through the United States mail usually in answer to letters mailed to C. F. Crist and Company. Moreover, Mr. Ludwig testified that C. F. Crist and Company represented Garnishee during this period and that he procured both the original policy and certificate for the Marshall contract through them. Furthermore, after the end of the 1936-1937 policy year, Garnishee sent its auditor to audit all of defendant's payrolls in connection with this and all other P.W.A. contracts and accepted a very substantial premium which it charged on the basis of this audit. Garnishee argues that the original requisitions, which Garnishee filed in 1935 with the Missouri Insurance Department, appointing C. F. Crist, Sr., and C. F. Crist, Jr., as agents "for the transaction of its authorized business of insurance in the State of Missouri" was "for a term ending March 1, 1936". However, since no appointments of anyone else were filed during 1936 or 1937 (and appointments of C. F. Crist and Company as General Agents were filed) we think it is a reasonable inference from all of the above facts that they continued to represent Garnishee. Certainly it would also be reasonable to find that the 1937 audit of defendant's business and the acceptance of the premium on the basis thereof was a ratification of their acts with reference to such business. We therefore, hold that Garnishee cannot repudiate the authority of C. F. Crist and Company to issue the certificate of insurance covering the Marshall contract.

 We also hold that the certificate became a part of the insurance contract between Garnishee and defendant. It is too plain for argument that its purpose was to broaden defendant's public liability insurance coverage to make it comply with P.W.A. requirements. To do so it was necessary to double the amount of liability for damages to one person or for one accident; and it was also necessary to add insurance for property damage, which was not in the policy at all but which the certificate covered up to $5000.00. It was likewise necessary for defendant's insurance to cover all such damages which might arise from operations under its contract, and the certificate did so cover all of its operations in connection with the Marshall contract. The testimony of the Secretary of the State Bi-Partisan Building Board, of the Chief Engineer of the P.W.A. and of Mr. Childers of the

General Contractor's firm, shows that this certificate was accepted and relied upon as showing Garnishee's contract for the required insurance coverage. Surely when after all this, and almost a year after this certificate was issued, Garnishee audited defendant's business, and collected a premium on the basis of this and other public works contracts, it cannot be permitted to repudiate the certificates upon which such work was obtained.

It seems obvious that the printed form of policy used by Garnishee was not prepared for the type and scope of business which defendant was conducting. This printed portion seems to have been drawn for operations at a single fixed location. The limitation concerning injuries caused by vehicles used "upon the premises described in Special Condition 4" could not be very well applied to construction work at numerous places throughout the state, because such places would change frequently as some projects were completed and new ones were commenced. This fact was recognized in writing the policy by describing in Special Condition 4 the "Places where such Trade or Business is Conducted" in the broadest possible language, namely: "623 Joplin St., Joplin, Missouri, and elsewhere in the State of Missouri." The least that could be said is that this broad language creates an ambiguity as to what places were meant to be covered, especially when considered in connection with the part of the insuring clause covering injuries "caused by reason of and during the progress of business operations described in Special Condition 4", when a necessary part of said operations was the transportation by motor vehicle of men and materials between defendant's headquarters at 623 Joplin Street and its various roofing jobs.

The rule of construction to be applied in determining the meaning of such ambiguities has been thus stated by this Court: "Speaking to insurance contracts, it is a just and settled rule that their restrictive terms shall be taken most strongly against the insurer. The doctrine of contra proferentem is strictly applied with unaccommodating vigor and, as said, ambiguities are blandly resolved in favor of the insured. So that, if the contract in suit is open to two constructions, one favorable to the insured and one not, if the insured has acted on the favorable construction, courts will take his view of the contract, being always mindful that the principal obligation (the very life and soul) of a policy is to pay the policy face when the contingency or event happens upon which payment is predicated." [State ex rel. Mills Lumber Co. v. Trimble, 327 Mo. 899, 39 S. W. (2d) 355.] This rule is particularly applicable here in view of the issuance of the certificates to make defendant's insurance comply with the P.W.A. insurance requirements, and stating with reference to the Marshall job; "covering all of the assured's operations in connection with the assured's contract on P.W.A. Docket No. 5131-L-2."

The Supreme Court of Alabama, in Bankson v. Accident & Casualty Co. of Winterthur, Switzerland, 13 So. (2d) 398, recently construed similar language in a public liability policy to cover an injury caused by a truck hauling sand over a public highway to a construction project. The policy excluded any claim caused by "(c) The ownership, maintenance or use of a vehicle of any description or of any draught or driving animal elsewhere, than within or upon the premises described in the Declarations:". The Declarations contained: "Item 3. The location by Town or City and State, with Street and Number, and the description of the operations hereby insured are as follows: (a) Location in all Buildings, Yards, Premises and Work Places constituting the Insured's permanent locations: *Attalla, Alabama, and elsewhere in the State of Alabama.*" The company contended, as does Garnishee herein, that "The coverage of the policy is not limited to any one particular place in the named territory, but, an accident happening on the premises of any one of the jobs, whether in Attalla, or elsewhere in the State of Alabama, would be covered by the policy; the reasonable interpretation being that the actual place of the construction job or jobs would be the premises and not all of "Attalla or elsewhere in the State of Alabama." Nevertheless the Alabama Supreme Court rejected this contention and held that the policy covered "the activities of the insured's employees in conducting his business operations in the instant case in transporting sand through Attalla, Alabama, and elsewhere in the State of Alabama." To the same effect is our decision in State ex rel. Mills Lumber Co. v. Trimble, supra, holding that the designation of the insured's location as La Plata covered injuries occurring anywhere in La Plata instead of only those happening within the insured's lumber yard.

Garnishee relies upon West Texas Stone Co. v. Employers Casualty Co. (Tex. App.), 178 S. W. (2d) 168 and Jacobs Concessions, Inc., v. U. S. Fidelity & Guaranty Co. (Md.), 28 Atl. (2d) 858. However, the policies in these cases contained no such broadening language as "and elsewhere in the State." Garnishee also cites Doherty's case, 294 Mass. 363, 2 N. E. (2d) 186, which was a Workmen's Compensation case. It holds that public highways are not "premises" of an employer so as to make him liable for compensation to employees of an independent contractor operating thereon. We so hold under our Workmen's Compensation Act. [See Rutherford v. Tobin Quarries, 336 Mo. 1171, 82 S. W. (2d) 918; State ex rel. Potashnick v. Fulbright, 350 Mo. 858, 169 S. W. (2d) 59.] None of these cases are in point on the construction of defendant's policy herein, nor is Brown v. Jones, 4 Fed. Cas. No. 2017 which merely held the words "or elsewhere" too indefinite to add anything to the description in that case. It is a very different matter, for Garnishee knowing the nature of defendant's business, to use words "and elsewhere in the State of Missouri" in connection with the location of insured's headquarters. We, there-

fore, hold that defendant's policy construed in connection with the certificate issued on the Marshall contract covers all of defendant's operations in the State of Missouri in connection with the work on that job.

We further hold that Dale's trip to Joplin, on which the collision with plaintiffs occurred, was sufficiently identified as a part of such operations. Garnishee's contention is that it was not shown that their injuries resulted from operations in connection with assured's contract on P.W.A. Docket No. 5131-L-2 described in the certificate. However, the original contract of that number was introduced in evidence and it was a contract for the two custodial cottages at Marshall. Dale was the foreman on that job and his trip to Joplin was in connection with that work. There is no basis in the record for finding otherwise than that the Marshall contract upon which Dale was foreman was any other than P.W.A. Docket No. 5131-L-2. We, therefore, hold that defendant's motions for a directed verdict were properly overruled.

Garnishee alleges error in instructions 1 and 2 for the same reasons urged in support of its motions for directed verdict and these are accordingly overruled. Garnishee also alleges error in the admission of the correspondence between defendant and C. F. Crist and Company. These are also overruled because we have held that there was substantial evidence to show that C. F. Crist and Company was Garnishee's General Agent, and the letters were material to show the attempt to limit Garnishee's liability through an indemnity agreement. We also overrule Garnishee's claim of error in refusing to admit in evidence forms of public liability policies of other insurance companies because we think they were wholly immaterial under the circumstance of this case.

Garnishee also objects to the form of the verdict and the judgments. There was one verdict for both plaintiffs for $17,411.29 for the total amount of their separate judgments against defendant and accrued interest; and also a separate verdict for 10% damages ($1741.12) and $2500.00 attorney's fees under Section 6040, R. S. 1939, Mo. Stat. Ann. However, judgments for the total amount of $21,625.41 were entered in each of the two original cases. The joint verdict for plaintiffs in the total amount due-both was proper because at the beginning of the trial it was agreed that both garnishments should be consolidated and tried as one case; but only one joint judgment should have been entered on this verdict.

Garnishee also contends that recovery of damages and attorney's fees under Section 6040 is authorized only by a policy holder in a suit on the policy. This contention must be sustained. Section 6040 authorizes such recovery ''in any action against any insurance company to recover the amount of any loss under a policy.'' Only an insured could suffer a *loss* under a policy, so that the plain words of

this statute make it applicable only to a suit by a policy holder against his insurer. Even our insurance garnishment statute (Sec. 6010, R. S. 1939, Mo. Stat. Ann.), only provides a method for a party to collect a judgment, obtained by him against a policy holder, by reaching what would be due from the insurer. It says nothing about damages and attorney's fees but only authorizes the judgment creditor of a policy holder "to reach and apply the *insurance money* to the satisfaction of the judgment." However, plaintiffs herein proceeded under the general execution garnishment statutes. (Art. 5, Chap. 8, Sec. 1560 et seq., R. S. 1939, Mo. Stat. Ann.) Certainly such proceedings are likewise only for the purpose of reaching and applying *the amount due* on an insurance policy to the satisfaction of their judgment. [See 4 Houts Missouri Pleading and Practice 2, Sec. 921.] We, therefore, hold that plaintiffs were not entitled to 10% damages and attorney's fees on garnishment.

The plaintiffs' judgment against Garnishee for the total amount of their judgments against defendant, together with accrued interest, is affirmed; their judgment for 10% damages and attorney's fees is reversed. The cause is remanded with directions to enter one judgment for plaintiffs jointly in the consolidated case for $17,411.29 with interest from March 21, 1945 and costs. All concur.

### On Motions for Rehearing.

Both parties have filed motions for rehearing. Garnishee's motion is a re-argument of the questions decided by the opinion and we adhere to our rulings as to all of them. Garnishee does further contend that the joint judgment is not authorized because of Section 97 of the Civil Code (Sec. 847.97 Mo. Stat. Ann.) However, that section relates only to compulsory consolidations and has no bearing on voluntary consolidations. Section 16 of the Code (Sec. 847.16 Mo. Stat. Ann.) authorizes voluntary joinder of plaintiffs when they assert rights "arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action". Therefore, plaintiffs could have joined under this section had it been in force when they commenced their garnishments. Certainly there is no good reason why they could not afterwards consolidate them by agreement. While separate judgments are authorized by this section, plaintiffs make no complaint concerning this joint judgment and Garnishee can be in no way prejudiced by it. Garnishee's motion is overruled.

Plaintiffs in their motion (also asking transfer to banc) contend that Section 6009, R. S. 1939, Mo. Stat. Ann. makes all persons, injured by one insured under a public liability policy, beneficiaries of the policy so that they are entitled to recover damages and attorney's fees under Section 6040, R. S. 1939, Mo. Stat. Ann. They even

argue that plaintiffs herein suffered a loss under the policy issued to defendant, and, therefore, have the right to recover on it. They say that this is true because Section 6009 makes such insurance a contract of indemnity against liability and not a contract of indemnity against loss. [Citing Yeats v. Dodson, 345 Mo. 196, 127 S. W. (2d) 652; and Hocken v. Allstate Insurance Co., 235 Mo. App. 991, 147 S. W. (2d) 182.] The trouble with this argument is that Section 6010, R. S. 1939, Mo. Stat. Ann. which provides the remedy for such an injured person who recovers a judgment for his injuries, only authorizes him "to reach and apply *the insurance money* to the satisfaction of the judgment." Thus it is required that he get judgment against the insured and he is not authorized to sue the insurer on the policy.

Of course, as plaintiffs point out, a beneficiary of a life insurance policy may recover damages and attorneys' fees under Section 6040; but this is because the policy is payable to him and he alone has the right to sue on it. Section 6009 only makes the liability of the insurance company absolute when there is liability on the part of the insured, instead of making it become dependent upon payment of the loss by the insured; but it does not purport to give the person injured by the insured the right to sue on the insured's policy. Section 6010, which provides his remedy, gives him only a right in the nature of an equitable garnishment to collect a judgment obtained against the policy holder. That is clearly stated to be the right "to reach and apply the insurance money"; and it is too plain for argument that damages and attorneys' fees under Section 6040 are not part of the insurance money due on an insurance policy. Plaintiffs are after all only garnishors and, if a garnishor is to have an allowance of attorneys' fees, such right must be given by the Legislature; it cannot be granted by this Court.

Plaintiffs' motion is overruled. All concur.