Ridgley C. **BENNETT**, Plaintiff-Appellant,

v.

**AMERICAN LIFE AND ACCIDENT INSURANCE COMPANY**, a corporation, Defendant-Respondent.

No. 34525.

Missouri Court of Appeals,
St. Louis District,
Division Two.

May 8, 1973.

Motion for Rehearing or Transfer Denied June 8, 1973.

Application to Transfer Denied July 16, 1973.

Raymond Howard, Jr., St. Louis, for plaintiff-appellant.

Gershenson & Gershenson, Clayton, for defendant-respondent.

KELLY, Judge.

Ridgley C. Bennett, Plaintiff-Appellant (hereinafter referred to as the Appellant) purchased an insurance policy from the Defendant-Respondent, American Life and Accident Insurance Company (hereinafter referred to as the Respondent) known as "The Provider Individual or Family Group Hospital-Surgical Policy" No. 510209, effective March 29, 1954. Appellant was the "insured member" and his wife, Eva J. Bennett, was named as the "beneficiary." The policy consisted of a basic policy, hereinafter referred to as the Policy, and two Riders attached thereto, all with the same effective date and issued at the same time. The premiums for the Policy and the two Riders were $2.00 per month for the Policy and $0.50 per month for each of the Riders; a total of $3.00 per month. Appellant paid his premiums as they became due and at all times pertinent to the issues in this case the insurance contract was in full force and effect.

The Policy provided indemnity for loss of life by accidental bodily injury, or for hospital and surgical expenses on account of sickness or accident to the appellant. The first indemnification afforded was for "Hospital Room, Board and General Nursing Care Expense Incurred" not to exceed $5.00 per day, maximum of $1,825.00. To receive this indemnity the insured had to be a resident patient for one day or longer due to either sickness or injury. The Respondent agreed to pay for the actual expense incurred for hospital room, board and general nursing care at the rate of $5.00 per day for the period of confinement, not to exceed 365 days. Confinement in a "Government Hospital" was "excepted" from coverage. This Policy also afforded indemnification for surgical benefits to the extent of $40.00 for chest surgery and

$25.00 for blood transfusions for any one period of confinement in a hospital. In the Exceptions and Limitations section on Page Two of the Policy the following appeared:

"This policy does not provide indemnities for . . .

(g) confinement in a Government hospital; . . ."

In the "General Provisions" Section of the Policy, Page Three, "hospital" was defined as follows:

"1. The word 'hospital' wherever used in this policy means a place, *other than a government hospital*, equipped with a laboratory, an operating room where surgical operations are performed by a licensed Doctor of Medicine or Osteopathic Physician, and which has accomodations for resident bed patients and a Registered Nurse always on duty." (Emphasis supplied.)

The first Rider attached to the Policy was entitled "Hospital Case Room Expense Rider" and referred to "Policy No. 510209, to which this Rider is attached." It amended the Policy to pay actual expense of Hospital Case Room Expense during hospital confinement as a resident patient not in excess of specified amounts, provided such services are furnished by the hospital and charges actually made therefor. The expenses subject to indemnification were the following:

"Operating Room, Anesthetic, X-ray, Laboratory Examination and Medicine and Drugs."

Among the Exceptions and Limitations of this Rider is the Following:

"This Rider does not provide indemnity for . . .

(e) benefits are payable under this Rider only as and when hospital room benefits become due and payable under the policy to which it is attached."

The second Rider attached to the Policy was entitled "Additional Indemnity Rider for Hospital Room, Board and General Nursing Care," and provided that the Company would pay the actual expense of hospital room, board and general nursing care at the daily rate of $3.00 in addition to the daily room rate shown in the Policy to which the Rider was attached for a maximum of 120 days during the fourth and subsequent years the Rider remained in effect. This Rider further provided that it did not alter or change any of the conditions of the Policy to which it was attached "except as specifically stated herein." It also contained an "Exceptions and Limitations" statement which read:

"This Rider does not provide indemnity for . . .

(e) *confinement to any Government, State, or City Hospital.*" (Emphasis supplied.)

It made reference to Policy No. 510209 stating that it was "Attached to and forming a part of" the said Policy.

On August 28, 1964, the Appellant was admitted to Koch Hospital suffering from communicable pulmonary tuberculosis and was confined continuously therein as a patient until he was discharged on September 7, 1965. During his confinement in the hospital he underwent surgery, was administered an anesthetic, and received a number of blood transfusions. When he entered the hospital the per diem charge was $11.61, which included everything the patient had to have: board, room, nursing care, surgery, x-rays, medicines, physician's fees, transfusions, anesthetic, operating room, etc. On March 31, 1965, the per diem charge was increased to $12.48 and remained at that rate during the remainder of the Appellant's confinement.

Respondent denied the benefits of the Policy and the Riders on the grounds that Koch Hospital was a Government Hospital within the exclusion sections of the Policy and attached Riders and this law suit fol-

lowed. Appellant's claim was tried to a jury which returned a verdict in his favor and awarded him a judgment of $1,940.00 with interest thereon at the rate of 6% per annum from July 7, 1965, in accord with Instruction No. 4, the verdict directing instruction given by the Trial Court. Respondent filed a Motion for Judgment in Accordance with Defendant's Motion for a Directed Verdict, Or In the Alternative, For Judgment Notwithstanding Verdict of Jury in Favor of Plaintiff and Against Defendant, Or In The Alternative For a New Trial. The Trial Court sustained the Respondent's Motion on the grounds 1) that the evidence showed that the Policy of insurance did not specifically cover treatment in a government hospital and 2) that the Appellant was treated in Koch Hospital, "which is a government hospital within the meaning of the terms of said policy of insurance, and said Koch Hospital was operated by the City of St. Louis, which is a municipal corporation." The judgment for the Appellant was thereupon set aside and judgment entered for the Respondent. This appeal followed.

On appeal the Appellant contends that the Trial Court erred in setting aside the judgment entered on the jury verdict and entering judgment for the Respondent on the grounds stated. He argues that the term "Government Hospital" as used in the Policy and the Riders attached thereto should be construed to mean a hospital operated by the Federal Government and not one operated by the City of St. Louis, a municipal corporation. He asserts that where the language in an insurance policy is susceptible of two or more meanings, one favorable to the insured and the other favorable to the insurer, that construction favorable to the insured must be adopted. It is his position that his construction of the terms is supported by the exclusion phrase in the Additional Indemnity Rider for Hospital Room, Board and General Nursing Care which excepts from indemnification under the coverage afforded by that Rider *"confinement to any Govern-*

*ment, State, or City Hospital,"* and that therefore when the term Government Hospital is used elsewhere in the Policy it is not used in its generic sense, but is limited to a hospital operated by the Federal Government.

Respondent, on the other hand, would have us construe the terms as the Trial Court did and takes the position that the phrase in the Additional Indemnity Rider restricting the benefits conferred on the insured therein does not affect the meaning of the terms in the Policy since the Policy and the Riders, which were all issued at the same time, clamped together, and specifically referring to Policy No. 510209, constitute one contract and can be construed to be clear and unequivocal, and deny recovery where, as here, the insured has been hospitalized in a City hospital.

Neither party has furnished the Court with any legal authority construing the terms "Government Hospital," nor has our research produced any case controlling the construction of those words. Appellant relies on Brugioni v. Maryland Casualty Company, 382 S.W.2d 707, 710–711 [3] (Mo., 1964) and Corder v. Morgan Roofing Co., 355 Mo. 127, 195 S.W.2d 441, 446 [5, 6] (1946). Brugioni, supra, stands for the general proposition that an insurance policy, being a contract designed to furnish protection, will, if reasonably possible, be interpreted to accomplish that object and not to defeat it; that if the terms of the contract are susceptible of two possible interpretations and there is room for construction, the provisions limiting or cutting down the coverage of the policy or avoiding liability thereon will be construed most strongly against the insurer. Corder, supra, supports the same legal principles.

Respondent relies on Blair v. Automobile Owner, 178 Kan. 615, 290 P.2d 1028 (1955), for the proposition that "government hospital", when used in an insurance policy, applies to a hospital operated by a government as that term would be used in its generic sense. We do not agree. In

Blair the definition section of the health and accident policy in issue excluded from its benefits indemnification for confinement in "any government[al] hospital, rest home[s], or institution[s] for the care and treatment of the mentally diseased." Plaintiff in Blair entered the "State Sanitorium for Tuberculosis" and the defendant insurance company denied coverage on the grounds that this was a government hospital within the exclusion section of its policy. The Supreme Court of Kansas in ruling that the plaintiff was entitled to the benefits of the policy of insurance held that the test to be applied in construing the terms of the policy was "not what the insurer intended its words to mean, *but what a reasonable person in the position of the insured would have understood them to mean.*" 290 P.2d 1030. The Court then held that the exclusion was applicable to "any government hospital for the care and treatment of the mentally diseased"; and that the State Sanitorium for Tuberculosis was not an institution for the care and treatment of the mentally diseased, and plaintiff was therefore entitled to the benefits of the policy. The Court did not decide whether the State Sanitorium was a "governmental hospital"; it never got to that issue and it was not necessary to do so in order to reach its decision.

Respondent also cites in its brief a series of authorities which support the proposition that the operation of a hospital by a municipality is a governmental function as opposed to a proprietary function. We do not quarrel with this proposition; however, we do not find it controlling here, where we are called upon to determine the meaning of "Government Hospital" in an accident and health insurance policy.

We are confronted with making a determination in the first instance whether the term constitutes an ambiguity before we can undertake an effort to construe it. If there is no ambiguity in the language of the policy the court has no authority to do other than give the plain language of the contract its plain meaning. City of Palmyra v. Western Casualty and Surety Company, 477 S.W.2d 428, 432 [3] (Mo.App.1972). An ambiguity exists in an insurance contract only if the language employed is indistinct, uncertain, or capable of being understood in two possible senses. Chamberlain v. Mutual Ben. Health and Acc. Ass'n., 260 S.W.2d 790, 793 [3] (Mo.App.1953).

The term "government" is defined in Webster's Third New International Dictionary (Unabridged) 1971, as follows:

"the continuous exercise of authority over and the performance of function for a political unit.

"the organization, machinery, or agency through which a political unit exercises authority and perform functions and which is usu. classified according to the distribution of power within it.

"the body of persons that constitutes the governing authority of a political unit or organization.

"usu.cap. the executive branch of the U. S. federal government including the political officials and usu. the permanent civil service employees."

We are of the opinion though that we can best arrive at the meaning of the term "Government Hospital" as used in this policy of insurance by a reading of the Policy and the Riders attached thereto, keeping in mind that the Respondent has conceded that they constitute "one contract" and must be read together. We have no problem with the meaning of the word Hospital as used in the Policy or any of the Riders, because the insurer has defined that in the General Provisions of the Policy. Nowhere in either the Policy or any of the Riders is the term "Government Hospital" explicitly defined.

■ An insurance policy is a contract designed to furnish protection and is purchased by the insured for that purpose. The Policy and Riders attached thereto here under consideration was purchased by the Appellant to provide "indemnity for loss of life by accidental bodily injury, *or for hospital and surgical expenses* on account of sickness or accident . . . ." as the Policy purports on page four thereof —the page containing the name of the Respondent and the title of the Policy—to afford the insured. The Appellant took the Policy and the Riders attached as delivered to him; he had no part in their draftsmanship nor in the terminology employed by Respondent in honing the exclusions and exceptions contained therein. While both the insured and the insurer may contract and agree that certain coverages afforded in the Policy might be restricted or excluded in some respects, it was the insuror who framed the language of the Policy in this respect and where the terms are susceptible of more than one meaning they must be construed in favor of coverage for the insured and the reasonable expectations of ths insured that he had coverage.[1] Thus in construing the terms of the insurance contract they should be construed as laymen would understand the terms and not according to the interpretation which might be given them by sophisticated insurance underwriters. Gerhardt v. Continental Insurance Companies, 48 N. J. 291, 225 A.2d 328, 332 (1966) ; Gray v. Zurich Ins. Co., 65 Cal.2d 263, 54 Cal. Rptr. 104, 110 [5], 419 P.2d 168, 174 [5] (Banc, 1966).

■ With the legal principles stated above in mind, we conclude that it would not be unreasonable for one reading the insurance contract we are here considering in its entirety and as a single contract of insurance to believe that the term "Government Hospital" as used in the coverage for Hospital Room, Board and General Nursing Care Expense section of the Policy to mean a hospital operated by the Federal Government. Blair v. Automobile Owners, supra. The failure of the Respondent to define the term within the Policy itself left the insured with the alternative of examining the entire insurance contract in an effort to determine what the insurer meant to except from the indemnification benefits. In conducting this examination the insured would learn that the Exceptions and Limitations section of the Additional Indemnity Rider provided no indemnity for "confinement to any Government, State or City Hospital." Can there be any equivocation in the meaning of the term "Government" as it is used there? Quite obviously any reasonable person could conclude that the term referred to the Federal Government in the Rider and was used in the Policy itself with reference to the term Government Hospital. Otherwise, why would it become necessary to specify in the Rider that confinement in "State and City" Hospitals was also excluded? If "Government" Hospital was intended to mean any hospital conducted by any level of government the use of that term in the Rider would serve the same purpose of exclusion as it did in the policy itself.

Respondent argues that any benefits payable under both of the Riders would be paid only as and when hospital room benefits became due and payable under the policy to which the Riders were attached.

1. Kessler, Contracts of Adhesion—Some Thoughts About Freedom of Contract, 43 Colum.L.Rev. 833 (1964) ; Keeton, Insurance Rights at Variance with Policy Provisions, 83 Harvard L.Rev. 961 (1970) ; Perlet, The Insurance Contract and the Doctrine of Reasonable Expectation, VI The Forum 116 (Jan.1971) ; Squires, A Skeptical Look at the Doctrine of Reasonable Expectation, VI The Forum 252 (July, 1971) ; and Keeton, Honoring Reasonable Expectations in the Interpretation of Life and Health Insurance Contracts, A.B.A.Sec.Ins. & N. & C.Law, Proceedings 1971, p. 213.

This is not so; for that proviso appears only in the Hospital Care Room Expense Rider and not in the Additional Indemnity Rider. But even were we to so construe it, it is not questioned that the Appellant did incur the expenses for the services rendered by the Koch Hospital during his confinement, and in view of our holding in this case that he is entitled to the indemnities provided under the terms of the Policy, he would also be entitled to those benefits afforded him under the Rider. Any claim under the Additional Indemnity Rider was not submitted to the jury because the Trial Court correctly concluded that such benefits were excepted by the explicit terms of the Rider on the grounds that Koch Hospital is a City Hospital within the meaning of the Rider attached to and made a part of the Policy.

We hold therefore that the Appellant was entitled to the benefits afforded him under the Policy of Insurance issued by the Respondent because the term "Government Hospital" as used in the context of the insurance contract excluded indemnification for confinement in any hospital operated by the Federal Government and did not exclude indemnification for expenses incurred while confined in a hospital operated by the State or City Hospital.

For the foregoing reasons the judgment of the Trial Court must be reversed and the cause remanded with instructions to the Trial Court to set aside its judgment entered for the Respondent notwithstanding the jury verdict and to reinstate the judgment of November 2, 1971, in behalf of the Appellant and against the Respondent in the sum of $1,940.00 with interest thereon at the rate of 6% per annum from July 7, 1965, together with the costs of the proceedings in the trial court. The costs of this appeal are assessed against the Respondent.

SMITH, P. J., and SIMEONE, J., concur.