**AMERICAN STATES INSURANCE COMPANY, Plaintiff/Respondent,**

v.

**P.R. DEVELOPERS, INC., Defendant/Appellant.**

No. 64102.

Missouri Court of Appeals, Eastern District, Southern Division.

May 10, 1994.

David G. Beeson, Buerkle, Beeson & Ludwig, Jackson, for appellant.

Kenneth L. Dement, Jr., Dement, Vandivort & Dement, Sikeston, for respondent.

AHRENS, Judge.

In this declaratory judgment action, defendant P.R. Developers (Insured) appeals from

---

the trial court's judgment that a commercial general liability insurance policy issued by American States Insurance Company (Insurer) provided coverage with limits of $100,000 on November 1, 1989. We affirm.

This declaratory judgment action arose out of a separate proceeding in which Shawn Buchanan sought damages in excess of $100,000 from Insured and others. Buchanan's action alleges injury sustained on November 1, 1989, while on a job site where a plant was being constructed for the Dana Corporation. Insured was a subcontractor on this job.

In November, 1987, Insured submitted an application for $100,000 of general liability insurance to Chap Arnold Insurance Agency (Agent), an independent insurance agency. The Chap Arnold Insurance Agency is an agent for Insurer. Insurer issued a one-year policy with liability limits of $100,000, covering the period November 7, 1987, through November 7, 1988. The policy was renewed for the period November 7, 1988 through November 7, 1989.

An initial estimated premium was charged annually on the policy. At the end of each policy year, Insured's books were audited by Insurer and an adjusted premium was charged, based upon liability coverage and the amount of payroll. During the 1988–1989 policy year, Agent charged and Insured paid premiums for $100,000 of liability insurance. Insurer did not charge Insured for liability coverage in excess of $100,000. Agent did not notify Insurer of an increase in liability insurance. Increases in liability coverage were effected by Agent sending a change endorsement form to Insurer. No change endorsement forms were sent to Insurer during the 1988–1989 year.

At various times, Insured requested that Agent issue certificates of insurance to be used for proof of insurance concerning work being performed by Insured. Agent had authority to issue certificates of insurance for Insurer. Agent issued certificates on several occasions in 1988 and early 1989 on jobs unrelated to the Dana Corporation construction. However, because of an error by Agent in computer data entry, the certificates of insurance issued by Agent showed the amount of insurance as $500,000. On July 6,

1989 and December 12, 1989, Agent issued certificates of insurance to Rentenback Contractors, the general contractor on the Dana Corporation job, also showing $500,000 coverage. Agent did not furnish copies of the erroneous certificates to Insurer.

There was conflicting evidence relating to the circumstances surrounding the issuance of the July 6, 1989 certificate of insurance on the Dana Corporation job. Insured's principal stockholder and owner, Mitchell Parris, testified that he told Chap Arnold, Agent's owner, that the subcontract on the Dana Corporation job required a two million dollar limit, that Insured "didn't have but half a million" and sought his advice. Parris further testified that Arnold advised Insured to send the certificate through and "see if it would fly." Parris also stated that he relied on the certificate in believing he had $500,000 coverage. On cross-examination, Parris acknowledged his deposition testimony that he had no recollection of informing Agent he needed $500,000 of coverage for the Dana job, and he had no agreement with Agent prior to November 7, 1989, to issue liability insurance in the amount of $500,000.

Chap Arnold testified he had no conversation with anyone from Insured concerning the amount of insurance the certificate for the Dana job was to show, and that Insured did not communicate to Agent the need for a certificate of insurance showing $500,000 coverage.

The trial court found that the more credible evidence was that "neither Mitch Parris nor anyone with [Insured] requested that Chap Arnold issue a Certificate of Insurance for $500,000.00 prior to or on the day of Defendant Buchanan's accident of November 1, 1989." The court further found that Insured was never billed or charged for an increase in insurance coverage between November 7, 1987 and June of 1991. The trial court concluded it should give effect to the intention of the parties and should not construe the insurance contract either to extend or restrict coverage beyond that actually provided. Accordingly, the court declared that the policy coverage afforded by Insurer's policy on November 1, 1989, was the amount set forth in the policy, $100,000.

In addition to the declaratory judgment count, Insurer's petition included a count for reformation of the contract as well as a negligence count against Agent. Insured filed a counterclaim against Insurer to enforce the contract and a cross-claim against Agent. By implication, the trial court's order on the declaratory judgment count disposed of the issues concerning reformation and the counterclaim for enforcement of the contract. This appeal followed.[1]

Insured raises two points on appeal. Our review is under the oft-cited standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Id.* We give due regard to the opportunity of the trial court to have judged the credibility of witnesses. Rule 73.01(c)(2). Further, we consider only those facts and inferences favorable to the prevailing party. *Kopff v. Economy Radiator Service*, 838 S.W.2d 449, 450 (Mo.App.1992).

■ In its first point, Insured claims that Agent had authority to bind Insurer and issue certificates of insurance representing $500,000 general liability coverage on Insured's policy. Insured further contends that Insurer placed Agent in a situation where a person of ordinary prudence would presume Agent had authority to bind his principal, and therefore Insurer is estopped from denying Agent's authority. Insurer does not dispute the issue of agency. However, Insurer asserts the trial court correctly limited its liability to $100,000 because Insured did not request Agent to increase the liability limits to $500,000 and the certificate was mistakenly issued due to computer error.

Insured relies on *Schimmel Fur Co. v. American Indemnity Company*, 440 S.W.2d 932 (Mo.1969) which held that a principal who places an agent in such a situation that a person of ordinary prudence is justified in presuming that the agent has authority to perform a particular act on the principal's behalf is estopped from denying such author-

ity as against an innocent third person. *Id.* at 938. Insured's reliance on *Schimmel* is misplaced. There, the parties mutually agreed to an expansion of policy coverage, and the insured was billed and paid for the desired coverage. Since the endorsement failed to express the agreement of the parties, through mutual mistake, the endorsement was found to be a proper subject for reformation to conform to the parties' agreement. *Id.* at 939. The issue in *Schimmel* was whether the agent had authority to perform the act of agreeing to an extension of the policy coverage. Here, the threshold factual question was whether the Insured requested and the Agent agreed to increase the amount of coverage. Resolution of that issue was dependent upon the trial court's judgment of the credibility of the witnesses and the resolution of conflicting testimony. We have thoroughly reviewed the record, and there is substantial evidence to support the trial court's factual findings that there was no request for and no agreement reached concerning increased coverage. Under these circumstances, Insured was not justified in presuming that Agent had authority to bind Insurer to an increase in coverage which was neither requested nor agreed to. Point denied.

■ In its second point, Insured claims the trial court erred in declaring the liability limit to be $100,000 because Insurer issued certificates indicating $500,000 limits to Insured and third parties, and Insured relied thereon. Insured advances several arguments in support of its claim of reliance. Insured contends it is "clear" that the intent of the parties was for insurance coverage of $500,000. We disagree. As previously discussed, there was conflicting evidence on this issue. Under our standard of review, we defer to the trial court's resolution of credibility. *Kopff*, 838 S.W.2d at 450.

Insured further argues that the certificate of insurance became a part of the insurance contract, citing *Corder v. Morgan Roofing Company*, 195 S.W.2d 441 (Mo.1946). However, *Corder* is distinguishable. In *Corder*, a certificate of insurance was issued which doubled the amount of liability coverage, added

---

1. Prior to trial, the court severed the negligence count and the cross-claim. The trial court entered an order pursuant to Rule 74.01(b) as to the declaratory judgment.

insurance for property damage, and certified complete coverage of all operations in connection with the insured's construction contract. All of these matters were requirements of the United States P.W.A. The court found it "too plain for argument" that the purpose of the certificate was to broaden the insured's public liability insurance coverage to comply with government requirements. *Id.* at 446. Significantly, the court here found the more credible evidence to be that the Insured did not request the insurance coverage be increased to $500,000, and did not request issuance of a $500,000 certificate of insurance. The certificate resulted from the earlier typographical error which erroneously showed $500,000 coverage.

Further, in *Corder*, the insured rejected a proposed indemnity agreement excluding P.W.A. requirements and instead suggested insured pay an additional premium for work on P.W.A. jobs and be covered under all requirements of P.W.A. The insurer completed an audit and charged the insured a large premium. The court found that when the insurer audited the insured's business and accepted a large premium on the basis of this and other public works contracts, the insurer could not be permitted to repudiate the certificates upon which the work was obtained. *Id.* at 446. Here, although there was an audit, the evidence in the record is that the certificates were not furnished to the auditors. Insured was never billed or charged for $500,000 coverage for the Dana job. Insured paid premiums for $100,000 coverage, not $500,000. Under these circumstances, Insured's claim that it was entitled to rely on the erroneous certificates of insurance as part of the contract of insurance is without merit. Point denied.

There is substantial evidence in the record to support the trial court's conclusion that Insured, Agent and Insurer intended that the policy provide $100,000 in coverage on November 1, 1989. The judgment is affirmed.

CRANE and CARL R. GAERTNER, JJ., concur.