

## NUMBER 13-16-00336-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

KENNETH HAHN,                                            **Appellant,**

**v.**

WIILLIAM PAUL GIPS, LUCILLE FAY GIPS
AND CONOCO PHILLIPS COMPANY,                    **Appellees.**

### On appeal from the 267th District Court
### of DeWitt County, Texas.

# MEMORANDUM OPINION
### Before Justices Rodriguez, Contreras, and Benavides
### Memorandum Opinion by Justice Benavides

This appeal arises out of the trial court's granting of summary judgment regarding a legal dispute over the ownership of mineral interests in certain land located in DeWitt County. By nine issues, which we construe as two central issues with various sub-issues, appellant Kenneth Hahn asserts the trial court erred by: (1) making certain rulings on Kenneth's summary judgment evidence; and (2) granting appellee William Paul Gips and

Lucille Fay Gips's (the Gipses) motion for summary judgment and denying his cross motion for partial summary judgment. We reverse and render in part and remand in part.

## I. BACKGROUND

### A. Pre-Partition Ownership Interests

This case concerns an approximately 74.15-acre tract of land (the Parent Property) located in DeWitt County. Various interests in the Parent Property were conveyed at different times by George T. Hahn and Louise Hahn. The parties relevant to this appeal are as follows: appellant Kenneth Hahn (Kenneth); his siblings George N. Hahn (George), Charles Hahn (Charles), and Doris Steubing (Doris); appellees the Gipses; and appellee ConocoPhillips Company (Conoco).

Prior to August 23, 2002, ownership of the Parent Property was divided as follows:

- Kenneth owned an undivided one-half interest of the Parent Property's surface estate, with an undivided one-fourth interest in the mineral estate of the Parent Property;

- George owned an undivided one-half interest of the Parent Property's surface estate, with an undivided one-fourth interest in the mineral estate of the Parent Property;

- Charles owned an undivided one-fourth interest in the mineral estate of the Parent Property; and

- Doris owned an undivided one-fourth interest in the mineral estate of the Parent Property.

### B. The Partition Deeds

In August 2002, Kenneth and George executed two separate partition deeds. The first partition deed recited that George and Kenneth were tenants in common of the surface estate of the Parent Property and desired to partition their interests. The first partition

2

deed granted "all of that certain real estate lying and being situated" in George's 37.07-acre interest of land (Tract A) to Kenneth,

> SUBJECT TO Reservation of one-half (1/2) of the minerals as stated in deed dated July 26, 2000, from Louise Hahn to Kenneth Hahn and George N. Hahn . . . .
>
> SUBJECT TO Louise Hahn's reservation of her undivided one-half (1/2) of the minerals as stated in deed dated July 26, 2000 from Louise Hahn to Kenneth Hahn and George N. Hahn . . . .
>
> SUBJECT TO Gift Mineral Deed dated March 7, 2002 from Louise Hahn to Kenneth Hahn et al. . . . .
>
> SUBJECT TO all reservations, restrictions, oil, gas and mineral leases, covenant and charges, if any, affecting the above described property, which are valid and existing in the Office of the County Clerk of DeWitt County, Texas.

The second partition deed recited that George and Kenneth were tenants in common of the Parent Property and desired to partition off their interests. The second partition deed granted "all of that certain real estate lying and being situated" in Kenneth's 37.07-acre interest of land (Tract B) to George,

> SUBJECT TO Reservation of one-half (1/2) of the minerals as stated in [a] deed dated July 26, 2000, from Louise Hahn to Kenneth Hahn and George N. Hahn . . . .
>
> SUBJECT TO Louise Hahn's reservation of her undivided one-half (1/2) of the minerals as stated in deed dated July 26, 2000 from Louise Hahn to Kenneth Hahn and George N. Hahn . . . .
>
> SUBJECT TO Gift Mineral Deed dated March 7, 2002 from Louise Hahn to Kenneth Hahn et al. . . . .
>
> SUBJECT TO all reservations, restrictions, oil, gas and mineral leases, covenant and charges, if any, affecting the above described property, which are valid and existing in the Office of the County Clerk of DeWitt County, Texas.

A month later, Kenneth and George filed correction partition deeds replacing the August 23, 2002 partition deeds, both of which contain essentially the same recitals and conveyances, and stated that the correction partition deeds were effective "as of August 23, 2002."

**C.      Sale to the Gipses and Subsequent Oil and Gas Lease**

In late September 2002, Kenneth entered into an earnest money contract with the Gipses to sell Tract A.  The contract recites the following in relevant part:

A.  Minerals, Royalties, and Timber Interests:

(1) Presently outstanding in third parties:

[M]ineral interest is owned in equal, undivided shares by George N. Hahn, Charles Hahn, Doris Steubing, and Kenneth Hahn[.]

(2) To be additionally retained by Seller:

Seller will include his undivided one-fourth (1/4th) mineral interest in the sale, but will retain one-half (1/2) of the royalty interest in that undivided one-fourth (1/4th) mineral interest (i.e. Seller will retain a one-eighth (1/8th) royalty interest).

In the time between entering into the contract and the closing of the sale on Tract A, attorneys for the Gipses and Kenneth exchanged correspondence seeking modification to the commitment for title insurance form regarding the parties' respective mineral interests.  On December 3, 2002, Kenneth executed the general warranty deed for Tract A to the Gipses (the Gips deed), which contained the following reservation:

SAVE AND EXCEPT and there is hereby reserved unto [Kenneth] herein, his heirs and assigns, an undivided one-half (1/2) non-participating interest in and to all of the royalty [Kenneth] now owns, (same being an undivided one-half (1/2) of [Kenneth's] one-fourth (1/4) or an undivided one-eighth (1/8) royalty) in and to all of the oil royalty, gas royalty and royalty in other minerals in and under and that may be produced from the herein described property. [Kenneth] . . . shall not participate in the making of any oil, gas or mineral lease covering said property, nor shall they participate in any rental or shut-

4

in gas well royalty to be paid under any such lease. However, such reservation is subject to reversionary interest to surface owner 15 years from the date of the death of George T. Hahn, Deceased, by virtue of the Last Will and Testament of George T. Hahn, Deceased . . . .

In July 2010, the Gipses entered into an oil and gas lease with Burlington Resources Oil & Gas, a subsidiary of Conoco. In 2011, Conoco requested that Kenneth and the Gipses "stipulate as to their ownership" in Tract A. Pursuant to this request, Kenneth and the Gipses stipulated that:

. . . . [I]t was the intent of the parties in the deed from [Kenneth] to [the Gipses] . . . that the interest reserved was a one-eighth (1/8) "of royalty" for a term of 15 years from June 9, 2002.

To effectuate the purposes of this Stipulation of Interest, each of the parties hereto does hereby grant, bargain, sell, convey, quitclaim and deliver unto each of the other respective parties any interest in [Tract A] necessary to vest in each of said respective parties the interest set opposite their name above, together with all rights incident thereto, to have and to hold the same to each of said parties and their respective successors, heirs and assigns forever.

In August 2010, Kenneth entered into an oil and gas lease with Conoco for Tract B which he purportedly deeded to George by partition deed in August 2002, for a primary term of three years. In May 2012, Conoco issued a division order to Kenneth pursuant to Conoco's lease to Tract B, which certified the ownership of mineral interests in oil and gas production payable by Conoco.

### D. Underlying Litigation

#### 1. Kenneth's Lawsuit

Kenneth subsequently sued the Gipses and Conoco, and he named Charles and Doris necessary parties to the lawsuit. In his lawsuit, Kenneth alleged that pursuant to the above-mentioned transfers, he owned a one-eighth royalty interest in Tract A and a one-

5

fourth mineral interest in Tract B. Kenneth further alleged that prior to filing suit, Conoco notified him that it believed that Kenneth had no interest in Tract B by virtue of Kenneth's conveyance to George as a result of the 2002 partition deeds.

Kenneth alleged that the interests in the mineral estates of Tract A and Tract B, pursuant to the 2002 partition deeds, were illustrated by the following chart:

| SEVERED MINERAL ESTATE | | |
|---|---|---|
| Owner | Mineral Interest in 74.15-acre tract | |
| | Tract A | Tract B |
| Doris | 1/4th mineral interest in the whole | |
| Charles | 1/4th mineral interest in the whole | |
| George | 1/4th mineral interest in the whole | |
| Kenneth | 1/8 royalty for a term | 1/4th mineral interest |
| The Gipses | 1/4th mineral interest, less a term 1/8 royalty | 0 percent mineral interest |

Kenneth asserted a trespass to try title cause of action and sought to confirm that he is a one-fourth mineral interest owner in Tract B, and that Conoco and the Gipses have wrongfully withheld his possession, rights, and benefits to Tract B. Additionally, Kenneth asserted a cause of action for breach of lease agreement against Conoco for failing to make royalty payments to him with respect to his ownership interest of Tract B, and he sought delinquent royalty payments, or in the alternative, reformation of the stipulation of interest. Kenneth also asserted causes of action for: (1) foreclosure of his lien on the oil and gas lease against Conoco; (2) money had and received against the Gipses for money instead owed to Kenneth; (3) unjust enrichment against the Gipses for being wrongfully overpaid money instead owed to Kenneth; and (4) trespass against Conoco with regard to Kenneth's "vested mineral interest in Tract A"; and (5) fraud and negligent misrepresentation against Conoco which caused Kenneth to sign the stipulation of interest,

6

when such action was unnecessary. Aside from seeking declaratory relief, Kenneth also sought actual and exemplary damages.

### 2. The Gipses' Motion for Summary Judgment

After Conoco and the Gipses filed their respective answers, the Gipses filed a traditional motion for summary judgment. In their motion, the Gipses alleged that the deeds between Kenneth and George contained no reference or reservation of the mineral estate, and, therefore, the deeds conveyed both the surface and mineral estates. As a result, the Gipses alleged that Kenneth's deed to them conveyed a one-half mineral interest in the entire Parent Property, less a one-eighth (1/8th) term royalty interest owned by Kenneth. In their motion, the Gipses further argue that the 2002 deeds between Kenneth and George acted more as "traditional deeds of conveyance" rather than partition deeds, as Kenneth asserts.

The Gipses prayed that the trial court conclude as a matter of law that: (1) the 2002 deeds between George and Kenneth are unambiguous; (2) George conveyed all of his interests in the oil, gas, and minerals in, on, and under Tract A to Kenneth; (3) Kenneth conveyed all of his interests in the oil, gas, and minerals in, on, and under Tract B to George; (4) the deed from Kenneth to the Gipses, coupled with the stipulation of interest, unambiguously conveyed to Gipses all of Kenneth's interest in the oil, gas, and minerals in, on, and under Tract A, less and except a one-eighth of royalty interest for a term of fifteen years from June 9, 2002; (5) the Gipses own one-half of the oil, gas, and minerals in, on, and under Tract A, subject to Kenneth's one-eighth royalty interest for a term of fifteen years from June 9, 2002; (6) Kenneth is estopped from claiming that the partition deeds between Kenneth and George did not convey oil, gas, and minerals to the

7

respective grantees; (7) Kenneth's claims to reform the partition deeds and the deed to Gipses are barred by limitations; (8) Kenneth is estopped from claiming reformation of the partition deeds, and the Gipses deeds, and the stipulation of interest; and (9) Kenneth take nothing by his lawsuit.[1]

The Gipses' position regarding the mineral estate, post-2002 deeds, can be illustrated by the following chart:

| SEVERED MINERAL ESTATE | | |
|---|---|---|
| Owner | Mineral Interest in 74.15-acre tract | |
| | Tract A | Tract B |
| Doris | 1/4th mineral interest in the whole | |
| Charles | 1/4th mineral interest in the whole | |
| George | 0 percent mineral interest | 1/2 mineral interest |
| Kenneth | 1/8th of the royalty for a term in Tract A | 0 percent mineral interest |
| The Gipses | 1/2 mineral interest in Tract A, less a term 1/8 of the royalty | 0 percent mineral interest |

### 3.    Kenneth's Counter Motion for Partial Summary Judgment

Kenneth filed a motion for partial summary judgment asserting that: (1) the 2002 partition deeds did not have the effect of partitioning the respective undivided mineral interests because it only affected the surface estate; (2) Kenneth conveyed to the Gipses only a one-fourth mineral interest, less the reserved term one-eighth royalty in Tract A; (3) the Gipses are estopped from claiming that they own one-half of the mineral interest in Tract A; and (4) the stipulation of interest is unenforceable or revocable at any time, but if it is enforceable, it only concerns the royalty interest that was reserved in the deed to Hahn and does not address the three-fourths mineral interest that was excepted by Kenneth.

---

[1] The record shows that Doris Steubing filed a response opposing the Gipses' motion for summary judgment, and she asked the trial court to deny the Gipses' motion.

### 4. The Trial Court's Judgment

After holding a hearing on the motions for summary judgment and on objections and motions to strike summary judgment evidence, the trial court concluded that the 2002 partition deeds were not ambiguous and that Kenneth and George both conveyed all of their interests, including their mineral ownership, to one another, through those 2002 partition deeds. The trial court further concluded that Kenneth's deed to the Gipses conveyed all of his mineral interests in Tract A, less and except one-eighth "of royalty" interest for a term of fifteen years beginning from June 9, 2002.

Based on these conclusions, the trial court:

(1) granted the Gipses' motion for summary judgment in its entirety;

(2) granted Conoco's objections and motion to strike exhibits attached to Kenneth's response to the Gipses' first amended motion for summary judgment in its entirety;

(3) denied all defendants' respective special exceptions to Kenneth's counter motion for partial summary judgment;

(4) denied Kenneth's counter motion for partial summary judgment in its entirety;

(5) granted Conoco's objections and motion to strike the affidavits attached to Kenneth's counter motion for partial summary judgment;

(6) sustained the Gipses' objections to Kenneth's summary judgment evidence; and

(7) declared that:
    (a) Kenneth's partition deed conveyed all of the grantor's interest in the oil, gas, and minerals in and under the southwest half of the 74.15-acre tract (Tract A);

    (b) George's partition deed conveyed all of the grantor's interest in the oil, gas, and minerals in and under the "northwest" [sic] half of the 74.15-acre tract (Tract B);

    (c) the Gipses' deed conveyed all of Kenneth's interest in the oil, gas, and minerals in and under the 37.07-acre tract of land (Tract B), only reserving to Kenneth, a fraction of royalty and not a fixed fractional

9

royalty and thus entitled Kenneth a fraction of royalty that floats in accordance with the size of the landowner's royalty contained in any present or future oil and gas lease and is equal to one-eighth of the landowner's royalty contained under present or future leases for a term of 15 years beginning June 9, 2002.

This appeal followed.

## II.   EVIDENTIARY RULINGS ON SUMMARY JUDGMENT EVIDENCE

By his seventh issue, which we examine first, Kenneth asserts that the trial court erred by excluding certain pieces of Kenneth's summary judgment evidence.

### A.   Standard of Review

An appellate court reviews a trial court's ruling that sustains an objection to summary judgment evidence for an abuse of discretion. *See Cruikshank v. Consumer Direct Mortg., Inc.*, 138 S.W.3d 497, 499 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995)). An appellant has the burden to bring forth a record that is sufficient to show the trial court abused its discretion when it sustained the appellee's objections to the summary judgment evidence. *See id.*; *see also Cantu v. Horany*, 195 S.W.3d 867, 871 (Tex. App.—Dallas 2006, no pet.) (holding the same).

### B.   Discussion

The Gipses objected to the following evidence attached to Kenneth's counter motion for partial summary judgment, which were all sustained by the trial court: (1) paragraphs 7 and 8 to Exhibit 1 (Affidavit of Kenneth Hahn), Exhibit 1-A (Sales Contract between Kenneth and the Gipses), and Exhibit 1-B (Kenneth's Business Records from the Gips Conveyance), each on hearsay, authentication, and parol evidence grounds; (2) paragraph two of Exhibit 6 (Second Affidavit of Kenneth Hahn) on grounds that it is

10

conclusory, improper opinion, and that "the document speaks for itself"; and (3) paragraph three of Exhibit 6 on grounds that it is immaterial and irrelevant because Kenneth did not plead failure of consideration. The trial court sustained the Gipses' objections.

As noted above, "an appellant has the burden to bring forth a record that is sufficient to show the trial court abused its discretion when it sustained the appellee's objections to the summary judgment evidence." *See Cruikshank*, 138 S.W.3d at 499. Here, the record is devoid of Kenneth's proffered summary judgment evidence; therefore, we are unable to conduct a proper review of whether the trial court abused its discretion in excluding that evidence.[2] As a result, we overrule Kenneth's seventh issue.

### III.    CROSS-MOTIONS FOR SUMMARY JUDGMENT

By his first through fifth issues, Kenneth challenges the trial court's granting of the Gipses' motion for summary judgment and denial of his motion for partial summary judgment.

### A. Standard of Review

Although a denial of summary judgment is generally not reviewable, we may review such a denial when both parties moved for summary judgment and the trial court granted one motion and denied the other. *Dallas Nat'l Ins. Co. v. Calitex Corp.*, 458 S.W.3d 210, 221 (Tex. App.—Dallas 2015, no pet.). In our review of such cross-motions, we review the summary judgment evidence presented by both sides and determine all questions

---

[2] We note that Kenneth's brief includes purported excerpts of the excluded summary judgment evidence. However, documents or excerpts solely appearing in an appellate brief are generally not part of the record and not considered on appeal. *See, e.g.*, *Jarvis v. Field*, 327 S.W.3d 918, 923 n.4 (Tex. App.—Corpus Christi 2010, no pet.) (holding that documents solely appearing in the appendix of an appellate brief are not part of the record and are generally not considered on appeal).

11

presented. *Id.* If we conclude the trial court committed reversible error, we render the judgment the trial court should have rendered. *Id.*

**B. Discussion**

**1. The Partition Deeds**

By his first two issues, Kenneth first argues that the trial court erred in concluding that the 2002 partition deeds executed by George and himself were conveyances.

Generally, a partition deed does not operate as a conveyance or transfer of title. *Hamilton v. Hamilton*, 154 Tex. 511, 520, 280 S.W.2d 588, 593 (1955); *see also Janssen v. Janssen*, No. 13-13-00523-CV, 2015 WL 4116671 at *3 (Tex. App.—Corpus Christi 2015, no pet.) (mem. op.). Instead, the effect of a partition deed is to divide the Parent Property and to give to each the share which he already owned by virtue of some prior deed or other conveyance. *Hamilton*, 280 S.W.2d at 593. The reasoning behind this proposition is that the parties to the partition deed already owned their respective interests; thus, a partition deed from one to another is not the conveyance of title but merely the division of the Parent Property so that each may have exclusive use and occupancy and the right to dispose of as he sees fit his own land, to make it in a form certain instead of an undivided interest in the whole. *Id.*

Partition deeds are binding contracts and subject to the usual rules of construction to determine their scope and application. *Garza v. De Montalvo*, 147 Tex. 525, 534, 217 S.W.2d 988, 993 (1949); *see also Jannsen*, 2015 WL 4116671 at *3. The primary duty of a court when construing an unambiguous deed, as in this case, is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the "four corners" rule. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). The

12

longstanding four-corners rule of construction established that when seeking to ascertain the intention of the parties, we harmonize all parts of the deed and construe every clause in the instrument to have some effect and in some measure to evidence their agreement. *Id.* at 462. Furthermore, even if parts of the deed appear contradictory or inconsistent, the court must strive to harmonize all of the parts construing the instrument to give effect to all of its provisions. *Id.* Lastly, the court should not strike down any part of the deed, unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part thererof. *Id.*

It is undisputed that prior to the 2002 partition deeds, Kenneth and George owned an undivided one-half of the surface estate of the Parent Property. The mineral estate of the Parent Property, however, was held by Kenneth, George, Charles, and Doris in equal, undivided shares. Each partition deed recites that Kenneth and George are tenants in common to the Parent Property and desired to make a partition so "each of them shall have and hold his or her respective portions of the said land in severalty." Kenneth granted George "all of that certain real estate lying and being situated" on the 37.07-acre tract of land known as Tract B. Likewise, George granted Kenneth "all of that certain real estate lying and being situated" on the 37.07-acre tract of land known as Tract A.

Looking within the four corners of the deeds, we agree that both partition deeds purported to convey each grantor's one-half undivided interests in the surface and a one-fourth undivided interest in the mineral estate. However, we disagree that the partition deeds at issue affected the mineral estate. As a general rule, cotenants may voluntarily partition land by written agreement, but all cotenants must participate in the voluntary partition. *See Dierschke v. Cent. Nat'l Branch of First Nat'l Bank at Lubbock*, 876 S.W.2d

13

377, 380 (Tex. App.—Austin 1994, no writ); *Bingham v. Kimbrell*, 285 S.W.2d 312, 313 (Tex. Civ. App.—Austin 1955, writ ref'd n.r.e.) ("An agreement to partition land must bind all the owners or none is bound."); *Ellis v. Patrick*, 93 S.W.2d 1201, 1202 (Tex. Civ. App.—Waco 1936, no writ) (holding that since a partition agreement was not binding on some of the joint owners, it was not binding on any of them). Here, the record conclusively shows that the partition deeds were not executed by Charles or Doris, who were cotenants in the mineral estate. As a result, because not all of the cotenants were a party to the partition of the mineral estate, none of the cotenants are bound by this purported partition of the mineral estate. *See Dierschke*, 876 S.W.2d at 380. We conclude that the trial court erred in ruling that the partition deeds transferred to Kenneth and George transferred anything more than the surface estate of Tract A and Tract B to each respective grantee. Stated another way, the partition deeds resulted in the following ownership interests:

(1) Kenneth held a one-hundred percent ownership interest in the surface estate of Tract A and retained an undivided one-fourth interest to the Parent Property's mineral estate;

(2) George held a one-hundred percent ownership interest in the surface estate of Tract B and retained an undivided one-fourth interest to the Parent Property's mineral estate;

(3) Doris held an undivided one-fourth interest to the Parent Property's mineral estate; and;

(4) Charles held an undivided one-fourth interest to the Parent Property's mineral estate.

We sustain Kenneth's first two issues.[3]

---

[3] To the extent that the Gipses argue that Kenneth is estopped from denying that the mineral estate was partitioned, such arguments are unsupported by the law in this case. The principle of estoppel was applied in a situation in which the non-joining cotenants to a partition acquiesced to the purported effect of the void partition and were later estopped from asserting any interest to the common estate. *See Joyner v. Christian*, 131 Tex. 274, 280, 113 S.W.2d 1229, 1233 (1938). The facts of this case are inapposite to those in *Joyner*, as no evidence shows any acquiescence on the part of the non-joining cotenants in this case.

## 2. The Gips Deed

Because we conclude that the partition deeds did not affect Kenneth's ownership interest in the Parent Property's mineral estate, we now examine the trial court's conclusions with regard to the Gips deed.

The trial court concluded that Kenneth conveyed all of his interest in the oil, gas, and minerals under Tract A, less a fraction royalty equal to one-eighth of the landowner's royalty, which "floats in accordance with the size of the landowner's royalty." We disagree with this construction of the Gips deed.

Stated again, in construing a deed, we utilize the four-corners rule in order to ascertain the intent of the parties from all of the language of the deed. *See Luckel*, 819 S.W.2d at 461. The relevant portions of the Gipses' deed deal with a reservation and exceptions to conveyance clauses. First, we note that the deed reserves to Kenneth:

> an undivided one-half (1/2) non-participating interest in and to all of the royalty Grantor now owns, (same being an undivided one-half (1/2) of Grantor's one-fourth (1/4) or an undivided one-eighth (1/8) royalty) in and to all of the oil royalty, gas royalty and royalty in other minerals in and under and that may be produced from the herein described property.

Furthermore, the exceptions clause to the deed further recognizes that the conveyance to the Gipses was also subject to two undivided 3/8 interests in the mineral estate of the Parent Property still belonging to Charles, George, and Doris, or an undivided three-fourths (3/4) interest.

First, we note that if a deed reserves a fraction of the minerals under the land conveyed, then the deed reserves a fraction of the part of the mineral estate actually owned by the grantor and conveyed in the deed. *Avery v. Grande, Inc.*, 717 S.W.2d 891, 893 (Tex. 1986). However, if the deed reserves a fraction of the minerals under the land

15

described, the deed reserves a fraction of the minerals under the entire physical tract, regardless of the part of the mineral estate actually conveyed. *Id.* We conclude that the former principle in *Avery* applies to the facts of this case because the deed reserves a fraction of the mineral interest of the land "described." Therefore, Kenneth conveyed to the Gipses one-hundred percent of the surface interest in Tract A, but Kenneth reserved a one-half interest of the one-fourth undivided mineral estate interest that he owned in the Parent Property, or an undivided one-eighth interest to the entire tract of the Parent Property's mineral estate. *See id.*

Second, the use of the phrase "subject to" indicates a grantor's intent to exclude the interest described under that particular clause. *See Angell v. Bailey*, 225 S.W.3d 834, 840 (Tex. App.—El Paso 2007, no pet.). Simply stated, use of the "subject to" phrase creates exceptions in the deed to favor those excepted interests listed. *See id.* Applying that principle to the facts of this case, the Gips deed recognizes and excludes the undivided and combined three-fourths mineral estate interest owned by George, Doris, and Charles.

Therefore, under the four corners rule, we conclude that the Gips deed resulted in the following ownership interests:

(1) Kenneth owns an undivided one-half interest of his original undivided one-fourth interest in the Parent Property's mineral estate;

(2) The Gipses own a one-hundred percent interest in the surface estate of Tract A and the remaining undivided interest in Kenneth's original undivided one-fourth mineral interest in the Parent Property;

(3) George owns a one-hundred percent interest in the surface estate of Tract B, and an undivided one-fourth mineral interest in the Parent Property;

(4) Doris owns an undivided one-fourth mineral interest in the Parent Property; and

16

(5) Charles owns an undivided one-fourth mineral interest in the Parent Property. We sustain Kenneth's third, fourth, and fifth issues.

### 3. Other Issues[4]

By his eighth issue, Kenneth argues that the trial court erred by granting the Gipses relief that was not supported by their live pleading. *See* TEX. R. CIV. P. 301; *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983) ("[A] party may not be granted relief in the absence of pleadings to support that relief."). By his ninth issue, Kenneth asserts that the trial court's judgment incorrectly identified Tract A as the "northwest half" of the 74.15-acre property at issue rather than the "northeast half." However, because we are reversing the trial court's judgment we need not address these issues. *See* TEX. R. APP. P. 47.1.

## IV. CONCLUSION

We (1) reverse the trial court's judgment granting the Gipses' motion for summary judgment and denying Kenneth's motion for partial summary judgment; and (2) render judgment in part declaring that: (a) the 2002 partition deeds failed to convey, partition, or in any way affect title possession, or ownership in and to the oil, gas, and other minerals underlying the 74.15-acre tract of land at issue in this case located in DeWitt County; and as a result, Kenneth owned a one-fourth undivided interest in and to the oil, gas, and other minerals underlying this 74.15-acre tract of land at the time the Gips deed was executed; (b) the Gips deed conveyed, among other things, Kenneth's one-fourth undivided interest

---

[4] We further conclude that in construing the Gips deed, the trial court improperly considered the 2011 Stipulation because it violated the four corners rule. As stated throughout this opinion, we construe an unambiguous deed by examining only what is stated within the four corners of the instrument. *See Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). The trial court concluded that the Gips deed was unambiguous, and so do we. Thus, the trial court erred in considering the stipulation because it was outside of the four corners of the Gips deed. *See id.* We sustain Kenneth's sixth issue.

in the oil, gas and other minerals to the 74.15-acre tract of land, reserving a fixed one-eighth non-participating royalty interest in and to all of the oil royalty, gas royalty, and royalty in other minerals in and under and that may be produced from the 74.15-acre tract of land for a term of fifteen years, beginning June 9, 2002.

We remand for any further proceedings consistent with this opinion.

GINA M. BENAVIDES,
Justice

Delivered and filed the
26th day of October, 2017.